### ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY v. JOT GUNTER.

Decided April 19, 1905.

**1.—Evidence—Market Value of Cattle—Market Reports.**

Evidence that cattle shipped to market were of a superior size and grade held sufficient to justify the introduction of the market reports of sales of cattle as evidence of their value on a given day.

**2.—Evidence—Expense—Amount.**

Evidence that additional expense was incurred by reason of delay in transporting cattle to market was admissible, though the amount of such expense was not definitely shown.

**3.—Value—Opinion—Objection to Evidence.**

Objection to a witness giving his opinion as to the market value of cattle based partly on his knowledge of market reports for the day and partly on information received from others is not tenable, though the latter source alone, being hearsay, did not qualify him to give his opinion.

**4.—Opinion Evidence—Transportation—Reasonable Time.**

A witness who has made previous trips with cattle to market over the same lines of road may testify as to the time made, as bearing on the issue whether the shipment in question was transported in reasonable time.

**5.—Delay—Damages—Avoidance by Reshipment.**

Where the circumstances justify a shipper, whose cattle have been delayed, in reshipping to another market in order to realize a better price, the measure of his damages will be the difference between the net amount he would have realized in the first market but for the delay and that finally obtained, provided the latter amount was not decreased by loss in weight or additional feed charges, etc., occasioned by delay of the subsequent carriers; for such loss only the latter carrier would be liable.

**6.—Same—Loss in Weight.**

Where cattle by delay in their transportation reached an unfavorable market and were shipped to another point for sale, the loss in weight by reason of such handling, as compared with the condition in which they would have been if shipped through directly from the original point of shipment to the place where they were finally sold was immaterial, as an element of

damages independent of the loss in net price realized, and the admission of evidence thereof was error.

**7.—Same.**

The carrier could be held responsible for the diminution in price by loss of weight in cattle resulting from their being held and reshipped to another market by reason of its negligent delay, but not for such loss by negligent delay of other carriers in transporting them to such other market.

**8.—Connecting Lines—Limiting Liability.**

A railway limiting by contract its liability to its own line is not liable for the negligence of connecting carriers.

**9.—Charge.**

Instruction held erroneous as permitting the recovery of certain damages arising out of a shipment of cattle, though the carrier was not negligent in their transportation.

Appeal from the District Court of Dallas County. Tried below before Hon. T. F. Nash.

*W. T. Henry,* for appellant.—Evidence of sales of other cattle from Texas and the Indian Territory, on the market, is inadmissible to prove what the market value of another shipment, which did not arrive in time, would have been, where there is nothing in evidence showing how the cattle sold compared with the cattle which did not reach the market. Chaney v. Coleman, 77 Texas, 103; Gulf, C. & S. F. Ry. Co. v. Hughes, 31 S. W. Rep., 411; Texas & Pac. Ry. Co. v. Barber, 30 S. W. Rep., 500; Laing v. United N. J. R. & C. Co., 54 N. J. L., 576.

Testimony that a shipper incurred additional expense in caring for cattle on account of a failure to reach a certain market is inadmissible when the amount of the additional expense is not shown, or that it was reasonable and necessarily incurred. Fry v. Hillan, 37 S. W. Rep., 359; Houston & T. C. Ry. Co. v. Cluck, 72 S. W. Rep., 83; First Nat. Bank v. San Antonio & A. P. Ry. Co., 72 S. W. Rep., 1033; International & G. N. Ry. Co. v. Sampson, 64 S. W. Rep., 692. The court erred in admitting the testimony of appellee's witness, W. B. Ecton, in relation to the freight charges between St. Louis and Chicago. Evidence of an additional expense, as to which the testimony is too uncertain to base any finding by the jury, should not be admitted. Same authorities.

The witness Ecton was allowed to testify over the objection of the appellant, as follows: "There was an additional freight charge, but just how much I am unable to state. The regular local freight rate from St. Louis to Chicago is eleven and one-quarter cents per hundred pounds, but I understand that cattle forwarded on through billing do not pay quite as much as this, but just how much less I am not prepared to state. There was an additional expense of twenty-four dollars for hay to feed the cattle at the Chicago yards. These two items of expense are over and above what would have been charged against the cattle had they been sold on the St. Louis market."

The court erred in admitting the testimony of the appellee's witness, W. B. Ecton, over appellant's objection, in relation to the difference that would have existed in the weight of appellee's cattle had they been shipped direct from Sherman, Texas, to Chicago, Ills., and the weight of

the cattle at the time of their sale in Chicago. Evidence which undertakes to establish the amount of damages which would have been suffered under theories or conditions which are not involved in the facts of the case is inadmissible. Willis v. McNeil, 57 Texas, 465; Kellogg v. McCabe, 92 Texas, 199; John P. King Mfg. Co. v. Solomon, 25 S. W. Rep., 449.

The statement of a bare opinion, by a witness, of the difference in what a shipment of cattle should have weighed upon arrival at destination, without the data upon which the opinion is formed, is inadmissible. Fort Worth & D. C. Ry. Co. v. Ward, 2 Texas Civ. App., 598; Gulf, W. T. & P. Ry. Co. v. Staton, 49 S. W. Rep., 277; San Antonio & A. P. Ry. Co. v. Barnett, 66 S. W. Rep., 474.

Market value can not be proven by testimony based in whole, or in part, upon the condition of the market as obtained from the statements of third persons, after the market referred to had ceased to be current. Southern Pac. Ry. Co. v. Maddox, 75 Texas, 300; Gulf, C. & S. F. Ry. Co. v. Baugh, 42 S. W. Rep., 245; International & G. N. Ry. Co. v. Staartz, 77 S. W. Rep., 1.

The statement of the time made between two points by shipments of cattle on certain other occasions is inadmissible to prove the time that should have been made in the present instance. Gulf, C. & S. F. Ry. Co. v. Irvine & Woods, 73 S. W. Rep., 540; Houston & T. C. Ry. Co. v. Wilson, 50 S. W. Rep., 156.

A witness who qualifies as an expert, after stating the facts of delays in transit, should be permitted to testify that such stops were not unreasonable or unnecessary. Southern Kansas Ry. Co. of Texas v. Sage, 80 S. W. Rep., 1041; International & G. N. Ry. Co. v. Clark, 71 S. W. Rep., 587.

The obligation and liability for damage to a shipment of cattle accompanied by the shipper's representative being restricted by the carrier to its own line of railway, it can only be held responsible for that part of the damage occurring in course of transportation (in the line of which transportation it was an intermediate carrier merely) which is shown by the shipper to have been caused on its line of railway. Southern Pac. Ry. Co. v. Hunter, 76 Texas, 195; Texas & P. Ry. Co. v. Arnold, 40 S. W. Rep., 831.

The measure of damages on account of a shipment of cattle failing to reach the market of a particular day is the difference in what they would have sold for on the market of that day and what they would have sold for on the first available market at the place of destination after their actual arrival, together with the additional expense of holding the cattle. Southern Kansas Ry. Co. of Texas v. Crump, 74 S. W. Rep., 335; Gulf, C. & S. F. Ry. Co. v. Butler, 63 S. W. Rep., 650; Gulf, C. & S. F. Ry. Co. v. McCarty, 82 Texas, 608; Gulf, C. & S. F. Ry. Co. v. Stanley, 89 Texas, 42; Southern Pac. Ry. Co. v. Hunter, 76 Texas, 195; Texas & P. Ry. Co. v. Arnold, 40 S. W. Rep., 831.

The cattle of appellee having been carried between East St. Louis and Chicago by another line of railway, and the evidence indicating that, had the shipment been carried between East St. Louis and Chicago in a reasonable and usual time, they would have sold to a better advantage on the Chicago market, the appellant could not be charged with the addi-

tional damage accruing from the delay between East St. Louis and Chicago. Missouri, K. & T. Ry. Co. v. Liebold, 55 S. W. Rep., 368; Texas & Pacific Ry. Co. v. Byers Bros., 73 S. W. Rep., 427.

The court erred in instructing the jury that they should find against appellant the extra expense incurred by appellee in shipping the twelve carloads of steers from East St. Louis to Chicago, even if they found that the appellant was not at fault in the transportation of the cattle to East St. Louis. A charge which incorrectly instructs the jury must be clearly shown by the record not to have been hurtful to the party against whom the error was committed. Gulf, C. & S. F. Ry. Co. v. Johnson, 44 S. W. Rep., 1067; Houston, E. & W. T. Ry. Co. v. Greer, 53 S. W. Rep., 58.

*Coke & Coke* and *Don A. Bliss,* for appellee.—The trial court did not err in admitting in evidence the market quotations of the prices of Texas and Indian Territory cattle in St. Louis, Mo., on the 12th day of December, 1902, published on that date in the National Livestock Reporter, a daily newspaper, which was shown to be authority as to the market in said place on said day, it having been shown by the testimony that appellee's cattle belonged to this class, and were at the top of said class in value. Gulf, C. & S. F. Ry. Co. v. Russell, 23 S. W. Rep., 527; Gulf, C. & S. F. Ry. Co. v. Patterson, 5 Texas Civ. App., 524; St. Louis, I. M. & S. Ry. Co. v. White & Co., 8 Texas Ct. Rep., 517; Missouri, K. & T. Ry. v. Cocreham, 10 Texas Civ. App., 167; Texas & Pac. Ry. Co. v. Donovan, 86 Texas, 378; Texas Ct. Ry. Co. v. Fisher, 18 Texas Civ. App., 79.

The trial court did not err in admitting the testimony of Sprecher to the effect that the keeping of the cattle in St. Louis from late in the evening of December 12 till the morning of Sunday, December 14, when they were shipped on to Chicago, involved an extra cost to appellee in the way of feed over what it would have cost if the cattle had been sold on the 13th of December, it having been shown by appellee that efforts had been made by his agents to sell the cattle in St. Louis on December 13, which had failed on account of there being no market there for said cattle on that day, and that the market in St. Louis the following day, Monday, December 15, would be overstocked, thus necessitating their shipment on to Chicago; and it having been further shown by appellee that this condition had been caused by appellant's negligence in failing to transport the cattle with reasonable dispatch, so as to get them to St. Louis in time for the market on Friday, December 12, 1902.

The trial court did not err in admitting the testimony of W. B. Ecton to the effect that shipping the cattle on to Chicago caused appellee to incur an additional expense in the way of additional freight charge, it having been shown that, by reason of appellant's negligence, the cattle failed to reach St. Louis in time for Friday's market, and that there was no market in St. Louis for the cattle on Saturday, and that there would be none there on Monday, thus necessitating the shipment of the cattle on to Chicago. 1 Sutherland on Damages, p. 148, and authorities cited in note 1.

The trial court did not err in admitting the testimony of W. B. Ecton as to the loss in weight that appellee's cattle suffered by reason of the

delay in getting them into Chicago, it having been shown that, by reason of appellant's negligence in failing to get the cattle into St. Louis in time for Friday's market, it became necessary to ship the cattle on to Chicago, and to dispose of them there on Monday's market in order to avoid a greater loss that would otherwise have occurred. 1 Sutherland on Damages, p. 148, and authorities cited in note 1.

The trial court did not err in admitting the testimony of W. S. Maher to the effect that he made an inquiry in St. Louis in regard to the market after he got there on Friday, December 12, 1902; that he found out something about the market on Friday; that he saw the quotations from the papers of Friday's market; that he also inquired of the salesmen about the condition of the market; that he made inquiry as to the market value of steers on Friday of such grade of cattle as appellee's cattle were, and examined the quotations; that, from the examination and inquiries he made, he thought he knew what the steers would have brought on that day, and that he thought they would have ranged from four and one-half cents to five cents a pound or better. Texas & Pac. Ry. Co. v. Donovan, 86 Texas, 378; Texas Ct. Ry. Co. v. Fisher, 18 Texas Civ. App., 79; Missouri, K. & T. Ry. Co. v. Cocreham, 10 Texas Civ. App., 167; Fort Worth & D. C. Ry. Co. v. Daggett, 27 S. W. Rep., 186; Houston & T. C. Ry. Co. v. Williams, 31 S. W. Rep., 556; Gulf, C. & S. F. Ry. Co. v. Wedel, 42 S. W. Rep., 1030.

The trial court did not err in permitting the witness Maher to testify that, on former occasions, he had made the trip from Sherman to St. Louis with shipments of cattle for appellee, and that the time consumed in these trips was forty-eight hours.

The trial court did not err in excluding the opinions and conclusions of the conductors, Gudici and Elkins, that the shipment of appellee's cattle was not unnecessarily delayed, and that there were no unusual stops, and the stops were not unreasonable or unnecessary on their runs; and, if there was any error in so ruling, it was harmless. Shelley v. City of Austin, 74 Texas, 608; Half v. Curtis, 68 Texas, 642; St. Louis & C. Ry. Co. v. Nelson, 49 S. W. Rep., 710.

If there was any error in the trial court's charging the jury that it was the duty of appellant to transport appellee's cattle from Texarkana to East St. Louis, such error was harmless, since it was shown by the undisputed evidence that appellant failed to transport the cattle to St. Louis, Mo., in time for said cattle to be placed on the market on Friday, December 12, 1902, and this was the gist of appellee's cause of action. Hubby v. Stokes, 22 Texas, 217; Houston Co. v. Dwyer, 59 Texas, 113; Armstrong v. Lipscomb, 11 Texas, 654; Hollingsworth v. Holshousen, 17 Texas, 47; Carter v. Eames, 44 Texas, 547.

The trial court did not err in instructing the jury that, as to the cattle sold in Chicago, appellee's measure of damages would be the difference between the price they were sold for in Chicago, less the expense of getting them from East St. Louis to Chicago, and what their market price would have been in East St. Louis on Friday, December 12, 1902. 1 Sutherland on Damages, p. 148, and authorities there cited in note 1.

Appellant, by its negligence in failing to transport appellee's cattle with reasonable dispatch, having caused said cattle to reach St. Louis at a time when there was no market for said cattle at that place at all,

is responsible for the loss, and has no right to complain of appellee's efforts to make the loss as small as possible by shipping his cattle to Chicago, appellant having failed to show that appellee failed to exercise ordinary prudence and diligence in so doing. 1 Sutherland on Damages, p. 148, and authorities there cited in note 1.

It is not a fair nor reasonable construction of the trial court's charge to claim that the same instructed the jury to find against appellant the extra expense incurred in shipping the steers from East St. Louis to Chicago, even though they should find that appellant was not at fault in the transportation of the cattle from Texarkana to St. Louis; but said charge instructed the jury that, even if they should believe there was a delay (unreasonable) in the transportation of the cattle from Texarkana to St. Louis, still, if they believed that appellee realized as much in Chicago for his cattle as he would have done in St. Louis if there had been no delay, they should find for appellant except as to the extra expense of shipping them on to Chicago.

FISHER, CHIEF JUSTICE.—This is a suit by appellee against the railway company to recover damages in the amount of $1,990, alleged to have been caused to a shipment of cattle delivered to appellant at Texarkana on the 10th day of December, 1902, for transportation to the City of St. Louis, and to the stockyards at East St. Louis. The petition, in effect, alleges that the defendant negligently failed to transport the cattle with reasonable dispatch, and, as a result, they failed to arrive at their destination in time for sale on the market in East St. Louis of Friday, December 12, 1902; that, had the cattle been transported in reasonable time, they would have arrived at East St. Louis on the morning of that day, and, by reason of the negligence in failing to transport within a reasonable time, they did not arrive at East St. Louis until about the hour of 10 o'clock p. m. of December 12, and after the market had closed; that the market on Saturday, the day following, had materially declined, and that the steers could not be sold on that day, but the cows embraced in the shipment were sold in East St. Louis on Saturday, and the steers were shipped by the appellee to Chicago, where they were sold on Monday. The appellee's claim for damages is, in effect, based upon the difference between what the cows sold for in East St. Louis and what they would have sold for if they had arrived there on the morning of the 12th, and for the difference between what the steers sold for in Chicago on the following Monday, and what they would have sold for in the market at East St. Louis if they had arrived there in time for the market of the 12th, and for extra expense for feeding, and extra freight bills to Chicago, occasioned by the delay in transportation to East St. Louis. Verdict and judgment were in appellee's favor for $800.

The first assignment of error complains of the action of the court in admitting in evidence, over appellant's objection, quotations from the National Livestock Reporter, showing certain sales of Texas and Indian Territory cattle at the National Stockyards on the 12th day of December, 1902, without any other or further evidence being offered to show that the cattle to which the quotations referred were the same class and

character of cattle as the cattle of appellee. There is evidence in the record to the effect that appellee's stock was Texas cattle of a superior class and grade, and the evidence upon this subject was of such a character that would authorize the jury to conclude that appellee's cattle were worth as much or more in the market in East St. Louis on the 12th than the cattle described in the National Livestock Reporter.

On another trial, a part of the objection urged to the admission of the evidence of the witness Sprecher, as complained of in the second assignment of error, will not again arise. The extra expense to the shipper, by reason of the delay caused by the railway company, could be recovered upon proof that the amount testified to was reasonable, and such expense was proper to be incurred.

The evidence of the witness Ecton, as complained of in the third assignment of error, was admissible. It was some evidence bearing upon the question as to the freight charges between East St. Louis and Chicago.

The fifth assignment of error complains of the action of the court in admitting the evidence of the witness Maher, who testified as to the market value of cattle in East St. Louis on December 12. Maher obtained his information as to the value of the cattle from reading the Livestock Reporter, and from information received from salesmen of commission houses, who claimed to have been familiar with the market on December 12. The objection of the appellant is as to the whole of this testimony. That portion of the evidence of the witness that is based upon the information obtained from the Livestock Reporter, we think, was admissible, but the information that he obtained from persons who claimed to be familiar with the market was hearsay; and upon another trial, in view of this ruling, the court will doubtless not again admit such evidence (Railway Co. v. Maddox, 75 Texas, 300) ; but information he obtained from reading the public journal known as the Livestock Reporter, which claimed to give the market prices prevailing upon certain dates was admissible. This question has been so often before this court that it is unnecessary to cite authority upon it. We do not make the objection to the evidence as to information obtained from persons who claim to have been familiar with the market price grounds for reversal, because the bill of exception shows that appellant's objection was to all of the evidence relating to the market value. A part being admissible, and the objection being to the whole, the bill of exceptions did not properly present the question in such a way as to require us to hold that the admission of the evidence was reversible error.

The evidence of the witness Maher, as complained of in the sixth assignment of error, was admissible. The time of the run made upon previous occasions, with which the witness Maher was familiar, was admissible, bearing upon the question as to what would constitute a reasonable time to transport the cattle from Texarkana to St. Louis.

The tenth assignment of error complains of the following charge of the trial court: "As to the cattle sold in Chicago, the measure of damages should be the difference between the price they were sold for in Chicago, less the expense of getting them from East St. Louis to Chicago, and what their market price would have been in East St. Louis on

Friday, December 12, 1902." As the case will be reversed on other grounds, we do not make the objection to this charge reversible error; but, in view of another trial, we suggest that a charge upon this subject be given in accordance with the views expressed in this opinion. The evidence of the witness who testified as to what the cattle sold for in Chicago tends to establish the fact that they were sold for their market value. This being true, the jury were possibly not misled by that portion of the charge quoted, which requires them to find the difference between the price they were sold for and their market value in East St. Louis. If, in view of the fact, the appellee was justified in carrying his cattle from East St. Louis to the Chicago market for sale, and there selling them, the measure of damages would be the difference between the market price of these cattle in Chicago on the day they were sold and what their market price would have been in East St. Louis on Friday, December 12, 1902.

The fourth assignment of error complains of the action of the trial court in permitting the witness Ecton, over appellant's objection, to testify as to the difference that would have existed in the weight of appellee's cattle had they been shipped direct from Sherman, Texas, to Chicago, Illinois, and the weight of the cattle that resulted by being unreasonably delayed in transit one or two or three days. The witness testified that if the cattle had been transported with reasonable dispatch direct from Sherman to Chicago, and had not been delayed one or two days in transit, they would, in his opinion, have weighed thirty-five pounds more per head than they did weigh when they were sold in Chicago on December 15.

We are of the opinion that this testimony was not admissible. It involved a condition and a theory that was foreign to the case. The contract of shipment showed that the cattle were shipped from Sherman, destined to East St. Louis, and the liability of each road was limited to its own line. The contract in nowise contemplated a shipment to Chicago, and there is an entire lack of evidence indicating any intention of a direct shipment from Sherman to Chicago. The evidence does show a delay on the appellant's road between Texarkana and the city of St. Louis, Mo.; but, for the delays that occurred from this latter place to the city of Chicago, the appellant could in nowise be held responsible, except, possibly, for the loss in weight, if any, that might have resulted from the detention of the cattle at East St. Louis. The evidence tends to show a delay in transporting the cattle from the end of appellant's line at the city of St. Louis to East St. Louis; and on account of the condition of the market at East St. Louis the cattle were held there from Friday night to sometime during the day of the following Sunday, and were then caused to be shipped to Chicago by the appellee, with a view of obtaining a better market at this latter place. The evidence also tends to show an unreasonable delay in the transportation between East St. Louis and the city of Chicago. Evidence of loss in weight predicated upon the theory that the appellant would be responsible for a failure of direct shipment through to Chicago is not permissible in view of the facts. As said before, there was no contract of shipment to Chicago, and, those delays that occurred after the cattle left the appellant's road, which were occasioned by the negligence of some other road, could

not be charged to the appellant; and if there was negligence in this respect, those roads should be held responsible. Whatever loss in weight might have occurred by reason of detaining the cattle in East St. Louis, if it was attributable to the negligence of the appellant in its failure to transport the cattle in a reasonable time, so that they could reach the market by December 12, might be chargeable to the appellant.

We are inclined to the opinion that the evidence of the witnesses Guidici and Elkins, which the seventh and eighth assignments of error complain that the court refused to admit, was admissible.

The ninth assignment of error complains that the court, in its charge, instructed the jury that it was the duty of the appellant with reasonable dispatch to transport the cattle from Texarkana to East St. Louis, Illinois. As said before, the contract of shipment limited the liability of each road to its own line; and the evidence, without contradiction, shows that the appellant's road terminated at the city of St. Louis, Mo. Therefore, we think this charge is erroneous, and should not again be repeated.

The appellee, in reply to this assignment, contends that this charge was harmless, because the appellant had occasioned such an unreasonable delay on its own line as prevented the cattle, in any event, from reaching East St. Louis for the market for which they were intended; that is, December 12. It is true that they did arrive at St. Louis and East St. Louis too late for the market of that day, but there is some evidence in the record tending to show an unreasonable delay between St. Louis and East St. Louis, for which the terminal lines between those two points might be held responsible, and with which roads the appellant is in nowise connected, except merely as a connecting carrier. While the delay between these two points was not the cause of the appellant's losing the benefit of the market of the 12th, still the jury may have considered it for some purpose, as tending to show that the cattle, being confined and kept in the cars after their arrival at St. Louis, might have had some effect in decreasing their weight and affecting their value. Therefore, we can not say that the jury were not influenced by the charge upon this subject.

The eleventh assignment of error complains of the action of the trial court in giving the charge set out under the tenth assignment of error, which is quoted in this opinion, for the reason that, as the cattle of appellee were transported from East St. Louis to Chicago by another line of railway, and there being evidence tending to show an unreasonable delay on that road, that the appellant could not be charged with the damages resulting from such delay.

The thirteenth assignment of error complains of the action of the trial court in giving the following charge: "If you find that defendant did exercise ordinary care in the shipment of the cattle from Texarkana to East St. Louis to avoid unreasonable delay; or if you find that plaintiff sold his cattle for as much as he would have sold them if there had been no delay, if you find there was a delay, you will find for the defendant, except as to the extra expense incurred by plaintiff in shipping the twelve carload of steers from East St. Louis to Chicago."

The objection urged in the assignment to this charge is that it permits the jury to find the extra expense incurred by plaintiff in shipping the

cattle from East St. Louis to Chicago, although the appellant exercised ordinary care to avoid an unreasonable delay in the transportation from Texarkana to East St. Louis. These two assignments of error will be considered together. First noticing the last assignment, we are clearly of the opinion that the charge is incorrect. Of course, the appellant can only be held liable upon the theory that there was an unreasonable delay in the transportation of the cattle from Texarkana to the end of its line; and if there was no unreasonable delay, under no circumstances could it be held responsible for any act of the plaintiff in shipping the cattle from East St. Louis to Chicago, and for any expense incurred by plaintiff in such shipment. The charge, as quoted, inferentially instructs the jury that, although there may have been no unreasonable delay upon the part of the appellant, it might be held responsible for the expense incurred in the shipment to Chicago. This is clearly the inference to be drawn from the latter part of the charge; consequently, it was erroneous to give it.

Now, in disposing of the eleventh assignment, we will indulge in some general remarks that might be pertinent as a guide to the court upon another trial. As we have said before, whatever unreasonable delay might have occurred on the railway transporting the cattle from East St. Louis to Chicago, the appellant could not be held responsible, but the cause of action would be against the road that was guilty of the delay. But the question arises in this case, and will doubtless arise upon another trial, as to how far, and to what extent, the appellant might be held responsible for the conduct of the plaintiff in shipping the cattle from East St. Louis to Chicago, and what damages might be charged against the appellant, growing out of that fact. If the delay of the appellant on its own line caused the plaintiff to lose the benefit of the market on the 12th at East St. Louis, and there would be no market for the steers at East St. Louis until the following Monday, and that that market would be overstocked, and the circumstances were such that the plaintiff, as a man of ordinary prudence, had the right to believe that, in order to prevent additional loss, he could get more in the Chicago market for his cattle than he could at East St. Louis on Monday, or could get as much in Chicago on Monday with the additional expense added, as he could have got in East St. Louis if the cattle had arrived there for the market of the 12th, then he would be justified in taking chances on the Chicago market and shipping his cattle there for sale on Monday. (Fort Worth & D. C. Ry. v. Daggett, 87 Texas, 323.) And if, in view of the facts, he was justified in adopting this course, the appellant would be in no position to complain, because the reasonable efforts of the plaintiff, acting under the circumstances as a man of ordinary prudence would be expected to act in order to prevent loss, would result in lessening the damages for which the appellant might be held responsible. If the unreasonable delay of the appellant forced the plaintiff into this situation, and to a resort to these means to protect himself against loss, the appellant should be held responsible for the extra expense incurred by plaintiff in transporting his cattle from East St. Louis to Chicago, except as to such extra expense as might have been occasioned by the negligence of the other railway lines engaged in such transportation; and such expense would include additional charges that

the plaintiff was required to pay, and such additional charges for feeding the cattle, unless the necessity for feeding was occasioned by the unreasonable delay of the other roads. If it be found that the appellant unreasonably delayed the transportation of plaintiff's cattle, so as to cause him to lose the benefit of the market at East St. Louis on the 12th, and the plaintiff thereafter incurred additional expense at East St. Louis in holding the cattle over at that place up to the time that they were started in their shipment to Chicago, these amounts would also be chargeable to the appellant, on the ground that, if the cattle had been promptly delivered on the morning of the 12th, they could have been sold in the market at East St. Louis on that day, and, of course, the plaintiff thereafter would have been relieved of any additional charges for feeding, etc.

The two remaining assignments complain of the insufficiency of the evidence to support the verdict and judgment. These assignments are overruled.

Judgment reversed and cause remanded.

*Reversed and remanded.*