TEXAS & PACIFIC RAILWAY COMPANY v. W. M. ISENHOWER.

Decided June 25, 1910.

1.—Carrier—Shipment of Live Stock—Failure to Provide Pens—Statute Construed.

Where, by the contract of shipment, certain live stock were to be delivered to the consignee at the Fort Worth Stock Yards, article 4519, Revised Statutes, requiring railroad companies to provide suitable pens for the reception and delivery of the stock at the place of delivery, would have no application, and the giving of said article in charge in such case would be reversible error.

2.—Market Value—Evidence—Stock Journal.

A live stock journal (in this case, the "Fort Worth Live Stock Reporter") is admissible in evidence for the purpose of proving the live stock market on certain dates, when accompanied by testimony that the publication was issued daily, was a credible journal, gave daily reports of sales of live stock on the market in Fort Worth, had been so published for many years, and was relied on by stockmen and cattle shippers in general as giving correct and reliable reports.

3.—Practice on Appeal—Refusal of Instruction.

Where the record does not show that a requested instruction was refused

by the trial judge, an assignment of error based upon an alleged refusal of such instruction, can not be considered.

#### 4.—Charge—Burden of Proof.

In a suit for damages to a shipment of cattle, the court charged the jury as follows: "If you do not find from the preponderance of the evidence that the plaintiff was damaged, as he has alleged in his petition, and that the damage, if any, was the proximate result of the negligence of the defendant's employees, then you will find for the defendant." Held, not subject to the objection that it placed the burden of proof upon the defendant of establishing its defense by a preponderance of the evidence.

Appeal from the County Court of Callahan County. Tried below before Hon. C. D. Russell.

*F. S. Bell,* for appellant. *W. L. Hall,* of counsel.

*J. H. Calhoun,* for appellee.

DUNKLIN, ASSOCIATE JUSTICE.—The Texas & Pacific Railway Company has appealed from a judgment in favor of W. M. Isenhower for one hundred and sixty-two dollars as damages to a shipment of cattle from Putnam to Fort Worth.

The cattle were consigned to Campbell Bros. & Rosson at Fort Worth, and the written contract for shipment stipulated for transportation from Putnam to Fort Worth, without any reference to a delivery at the stock yards in North Fort Worth, but the testimony introduced by plaintiff tended to show that the defendant received the cattle with the understanding on the part of both parties to the contract that the cattle were to be delivered to the consignees at the Fort Worth Stock Yards in North Fort Worth. The jury were instructed that if they should find that the shipment was undertaken by defendant with that understanding between the parties, and that defendant failed to transport and deliver the cattle to the consignee with ordinary care and diligence, and if the cattle suffered injury as a proximate result of such failure, then a verdict should be returned in favor of plaintiff for damages for such injuries. In addition to that instruction the court further charged the jury as follows:

"You are further charged that it was the duty of the defendant, the Texas & Pacific Railway Company, to provide suitable pens for the delivery of said cattle, and if you find from the evidence that the said defendant negligently failed to provide such pens and the said cattle were damaged, if they were damaged at all, as the proximate result of such failure, then said defendant would be liable for such damages. But if you find from the evidence that the damages to said cattle, if any, were not the proximate result of such failure (if you find that defendant did so fail to provide suitable pens) then you will find for the defendant."

In giving the instruction quoted we think there was error. Appellee insists that this instruction was proper in view of article 4519, Sayles' Texas Civil Statutes, reading as follows: "Each and every railroad

company is hereby required to erect at each and every depot, station or place established by such company for the reception and delivery of freight, suitable buildings or inclosures to protect produce, goods, wares and mercandise and freight of every description from damage by exposure to the weather, stock or otherwise; in default of which such railroad company shall be liable to the owner of such produce, goods, wares or merchandise for the amount of damages or loss sustained by reason of such improper exposure, together with all costs and expenses of recovering the same, including necessary attorney's fees."

The evidence showed that defendant after transporting the cattle to Fort Worth, delivered them to the Belt Railway Company at about 10:40 a. m. on October 17, 1907, and the latter company carried them to the Fort Worth Stock Yards, where they were unloaded between three and four o'clock p. m. of the same day, too late for the market of that day. It was further shown that there was a heavy run of cattle on that day, all of which were unloaded into the Fort Worth Stock Yards in the order of their arrival; that on account of the great number to be unloaded arriving ahead of plaintiff's cattle, the unloading of his cattle was delayed, and but for the delay so caused they would have been unloaded in time for sale on the market of October 17th. Witnesses for defendant testified without controversy, in effect, that the stock yards could not have received plaintiff's cattle any earlier than they were received on account of the necessary delay, of approximately two and one-half hours, in unloading other shipments which had preceded them.

If, as contended by plaintiff, the shipping contract bound defendant to transport and deliver the cattle to the consignees at the stock yards, then article 4519, quoted above, was not applicable. If defendant had provided pens near the stock yards and had then unloaded the cattle its contract would not have ended until it had taken them from those pens and carried and delivered them in the stock yards, as those were the pens into which the parties had agreed that the cattle should be delivered.

When the cattle were unloaded in the stock yards, the market had closed and for that reason they could not be sold until the opening of the market on the following day. The measure of plaintiff's damages submitted in the charge was the difference in the market value of the cattle in their condition when delivered in the stock yards and what would have been their market value at the place of delivery had they been delivered with ordinary diligence and promptness. After submitting this as the measure of damages the court further instructed the jury as follows: "In considering the reasonable market value of said cattle at the time they were delivered in the pens at Fort Worth, if you find that there was no market for them there at that time on that date, you may take as their reasonable market value at that time what their reasonable market value was at the earliest time thereafter that there was a market for them at that place."

The testimony introduced by plaintiff showed that the market for some of the cattle was lower on October 18th than it was on the day preceding. If defendant contracted to deliver the cattle at the stock yards, and if it was negligent in failing to make the delivery in time for the market of the 17th of October, then the proper measure of plaintiff's damages for such negligence would be as stated in the first instruction on that issue noted above. While the charge quoted is subject to criticism as not being strictly accurate, nevertheless, in view of the preceding instruction referred to above, we do not think that the jury could have been misled thereby to the defendant's injury. Indeed, it would seem that the plaintiff would have better reason to complain that the instruction was prejudicial to him because when construed literally it might be understood as an instruction that the market of the 18th was the same as that of the 17th.

Over defendant's objection the court admitted copies of the Fort Worth Live Stock Reporter to show the market values of plaintiff's cattle on the 17th and 18th days of October. The ground of objection was that it had not been shown that the reports of the market as thus published was correctly kept. We think the objection is without merit. The evidence of several witnesses was to the effect that the publication was issued daily, was a credible journal, and gave daily reports of sales of different kinds of cattle, hogs, and sheep on the market in North Fort Worth, and had been so published for many years, and was relied on by stockmen and cattle shippers in general as giving correct and reliable reports. This rendered the publication admissible, and there was no error in permitting the plaintiff to give his opinion on the market value of his cattle based upon those reports. Texas & P. Ry. Co. v. Slator, 102 S. W., 156.

Complaint is made of the refusal of two special instructions requested by the defendant. The record does not contain any certificate of the trial judge certifying that the instructions were refused by him, and therefore the assignments based upon the alleged refusal of those instructions can not be considered. Sayles' Texas Civil Statutes, articles 1319 and 1320; 1 Greenleaf on Evidence, section 86; the case of J. C. Sowers v. J. W. Yeoman, 62 Texas Civ. App., 188 (129 S. W., 1153).

The sixth paragraph of the court's charge reads: "If you do not find from the preponderance of the evidence that the plaintiff was damaged, as he has in his petition alleged, and that the damage, if any, was the proximate result of the negligence of the defendant's employees, then you will find for the defendant." Appellant insists that the effect of this instruction was to place upon the defendant the burden of establishing its defense by a preponderance of the evidence. The charge directed a verdict in favor of the defendant in the contingency named and we fail to perceive how it is subject to the interpretation suggested.

For the error in the charge pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*