### WESTERN UNION TELEGRAPH CO. v. ECKHARDT. (No. 7155.)*

Court of Civil Appeals of Texas. Austin.
Nov. 7, 1927.

Rehearing Denied. Nov. 23, 1927.

1. **Telegraphs and telephones** ⊜➾67(1)—**Proffered employment to baseball player held for season of year, as regards right to damages for delay in delivering telegram containing offer.**

Where professional baseball player was negotiating for employment as regular member of professional team, and standard form of contract was used in employing players for playing season, proffered employment to player by telegram of job with Columbus team of the American Association was for playing season of year, as regards right to recover damages for delay in delivery of telegram, though no definite time was stated, and was not mere hiring at will or from month to month.

2. **Telegraphs and telephones** ⊜➾38(6)—**Telegrams stating negotiations for employment as baseball player held notice to telegraph company that they related to offer of employment.**

In suit for damages for delay in delivery of telegram offering plaintiff employment as professional baseball player, telegrams to baseball player, carrying on their face notice that they were negotiations for employment as player with baseball team, were sufficient notice to transmitting company that they related to offer of employment consistent with usual course of dealing in designated business; it being matter of common knowledge elaborate system of rules have been promulgated for employment of players.

3. **Evidence** ⊜➾20(1)—**Court of Civil Appeals cannot take judicial notice of terms of employment of professional baseball players.**

Court of Civil Appeals may not take judicial notice of terms of employment made with professional baseball players.

4. **Telegraphs and telephones** ⊜➾66(4)—**Finding plaintiff seeking damages for delay in delivering telegram offering employment as baseball player would have remained during season supported by evidence.**

In action for damages for delay in delivery of telegram offering plaintiff employment as professional baseball player, finding that, if plaintiff had made contract with team, as offered, he would have remained with that club during playing season, held supported by evidence.

5. **Telegraphs and telephones** ⊜➾65(6), 66(1)—**Telegraph company, sued for delay in delivering telegram offering employment as professional baseball player, must plead and prove matters mitigating damages.**

In action against telegraph company for damages in delaying delivery of telegram offering plaintiff employment as professional baseball player, contentions by defendant that player could only recover for loss up to time

---

of receiving other employment, or that credit should be given for earnings during period of proffered contract, were matters of defense, as to which defendant had both burden of pleading and proof.

**6. Evidence ⚖➔361—Baseball guide held admissible to show beginning and end of playing season as regards recovery of damages for delay in delivering telegram containing offer of position.**

In action against telegraph company for damages from delay in delivering telegram offering plaintiff employment as professional baseball player, baseball guide was admissible in evidence to show beginning and end of playing season of particular club, where it was shown by witness, familiar with official records of baseball, that guide was an official baseball publication.

**7. Appeal and error ⚖➔1050(1)—Admitting baseball guide to show beginning and termination of baseball season as respects right of player to recover damages for failure to deliver telegram containing offer of position held not prejudicial.**

In action for damages for delay in delivering telegram offering plaintiff employment as professional baseball player, error, if any, in admitting copy of baseball guide to show beginning and end of playing season of particular club, *held* not prejudicial, where the beginning and termination of the season was proven by other evidence which was admitted without objection.

**8. Appeal and error ⚖➔1170(1)—Causes should not be reversed, when there is no reasonable probability of prejudice (Court of Civil Appeals rule 62a).**

Causes should not be reversed, when there is no reasonable probability of prejudice, in view of Court of Civil Appeals rule 62a.

**9. Appeal and error ⚖➔1151(2)—Error in allowing interest prior to judgment may be corrected without further trial.**

Error in allowing interest from date of accrual of liability rather than date of judgment is one purely of law, affecting only severable part of judgment, and may be corrected without further trial in court below,

**10. Damages ⚖➔67—Interest is recoverable from date of accrual of liability, where damages are complete at definite time, though interest eo nomine is recoverable only where allowed by statute (Rev. St. 1925, arts. 5069, 5070).**

Interest eo nomine is recoverable only where allowed by statute (Rev. St. 1925, arts. 5069, 5070), but, where damages, whether ex contractu or ex delicto, are complete at definite time, and amount is determined by fixed rules of evidence and known standards of value, interest is recoverable as matter of law from date of accrual of cause of action.

**11. Telegraphs and telephones ⚖➔59—Addressee's right of action on telegram sent for his benefit is ex contractu.**

The right of action in the addressee of a telegram sent for his benefit is ex contractu.

**12. Damages ⚖➔68—Liability for delay in delivering telegram bears interest from accrual, in absence of stipulation limiting liability.**

In action against telegraph company for damages from delay in delivering telegram offering plaintiff employment as professional baseball player, liability sued on would bear interest from its accrual, in absence of stipulation on telegram limiting liability to stated amount.

**13. Damages ⚖➔68—Right to recover interest for delay in delivering telegram is predicated on company's obligation to discharge liability resulting from breach of contract to transmit message.**

In action by addressee of telegram for damages from delay in delivery, contract of telegraph company imports obligation to use proper diligence in delivering message and to discharge liability created by breach of contract, and right to recover interest is predicated on obligation to discharge liability resulting from breach.

**14. Telegraphs and telephones ⚖➔54(6)—Stipulation on telegram limiting company's liability does not affect right to recover interest.**

Stipulation on telegram that telegraph company shall not be liable beyond sum of $500 for delay in transmitting message, or for mistakes, delay, or nondelivery of message, is limitation on liability for specified derelictions of duty, and has no bearing on right to recover interest as damages for detention of compensation caused by delay in delivering message.

**15. Telegraphs and telephones ⚖➔54(6)—Limitation of liability for delay in transmitting telegram authorized allowance of interest on amount recovered from date of accrual of liability.**

In action for damages for delay in delivering telegram offering plaintiff employment as professional baseball player, stipulation on telegram limiting company's liability to $500 for mistakes, delay, or nontransmission of message limits liability as of date of accrual of such liability, but does not limit amount of recovery for withholding of compensation in satisfaction of such liability, and hence plaintiff was entitled to interest on $500 recovered from date of accrual of liability, not date of judgment.

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Action by O. G. Eckhardt, Jr., against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Hart, Patterson & Hart, of Austin, and Francis R. Stark, of New York City, for appellant.

Henry H. Brooks and Robert M. Turpin, both of Austin, for appellee.

McCLENDON, C. J. The parties: O. G. Eckhardt, Jr., plaintiff and appellee; Western

---

⚖➔For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Union Telegraph Company, defendant and appellant.

The cause of action: Damages for delay in delivery of a telegram offering plaintiff employment as a professional baseball player.

The judgment: For plaintiff upon special issue verdict for $500 (loss of salary during the proffered contract period, up to the amount limited by the contract of transmission), with interest thereon from September 27, 1925, the end of the 1925 season.

The material evidence: Plaintiff (24 years old at time of trial, January 1927) had had the following experience as a baseball player: Austin high school team, as pitcher and outfielder; University of Texas team three years as pitcher and outfielder; and player of semiprofessional baseball in summer with various Texas teams. In the late summer of 1924 he endeavored to obtain employment as a professional baseball player for the 1925 season through one Saplica, who is described as a "scout of the Cleveland American League Baseball Club." These efforts were continued through the ensuing winter. On June 3, 1925, the following telegrams in order following were sent over defendant's wires:

Saplica to plaintiff:

"Have chance to get you job, Columbus American Ass'n. Wire answer Elks Club immediately."

Plaintiff to Saplica:

"Can report June tenth if terms satisfactory. Wire details. Would want to go if terms satisfactory."

Saplica to plaintiff:

"Salary three hundred fifty month to start with June tenth reporting satisfactory answer immediately."

The first and third were addressed to "Oscar Eckhardt, Jr., Ball Player, Austin, Texas." The third was not delivered until June 9th; the delay resulting in loss of opportunity to accept the employment offered. Plaintiff thereafter obtained employment with the Cleveland Club, of the American League, at a salary of $350 a month. The evidence shows that he did not become a member of the Cleveland team, but was merely a "visitor," to be tried out by the club with a view of his employment for the 1926 season. He was with that club from July 1st to August 15th, when he voluntarily left the employment. In the meantime he "signed up" with the Cleveland Club for the 1926 season at $400 a month. Prior to June 3, 1925, he had a contract as athletic coach with the Canyon Normal School, services to begin early in September, 1925. The terms of this contract are not shown. There was evidence that he assigned as his reason for leaving the Cleveland Club that it was in order to comply with this contract. It was shown that the contract he would have been given with the Columbus Club had he accepted it promptly was the uniform player's contract approved by the National Association of Professional Baseball Leagues, for "the playing season of 1925," binding him to all the rules and regulations of the association, and carrying with it right of transfer to other clubs and option on his services for the following season. It contained the usual clause in such contracts that it was terminable "at any time by the club or by any assignee." The message sued upon was an unrepeated one, and bore the following restriction, which defendant relied upon as a limitation upon its liability:

"The company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery, of any message received for transmission at the unrepeated-message rate beyond the sum of five hundred dollars."

Appellant urges five propositions, which, for convenience, we will consider in a different order from that in its brief.

The fifth proposition is that the offer was only of a hiring at will, since no definite duration was stated, and the salary per month would only bind the sender to the rate stated; and the fourth is to the effect that in any event the sender was not bound beyond the period of one month beginning June 10, 1925. Under the fifth proposition only nominal damages would be recoverable, and under the fourth loss of salary from June 4th to June 30th only, both inclusive, since the employment with Cleveland at the same rate began July 1st.

[1] The evidence conclusively shows that plaintiff was negotiating for employment as a regular member of a professional team, and that a standard form of contract was used in the employment. There are no essential elements of difference between this form and that under consideration in the leading case of Philadelphia Ball Club v. Lajoie, 202 Pa. 210, 51 A. 973, 58 L. R. A. 227, 90 Am. St. Rep. 627. We hold the proffered employment was for the 1925 season.

[2, 3] In so far as these propositions may be construed to raise the question of notice to defendant, they are manifestly without merit. The first and third messages carried on their face notice that they were negotiations for employment as a player with a well-known professional baseball team a member of a well-known association. While we may not take judicial notice of the terms of employment made with players, it is a matter of common knowledge that an elaborate system of rules and regulations have been promulgated dealing with terms of employment of players, to which every player must bind himself by contract. This being true, the telegrams carried on their face sufficient notice to the transmitting company that they related to an offer of employment consistent with the usual course of dealing in the designated business. Pfiester v. Western Union Tel. Co., 282 Ill. 69,

118 N. E. 407, Ann. Cas. 1913D, 738, is an all fours case.

[4] The first proposition questions the sufficiency of the evidence as a matter of law to sustain the fourth jury finding to the effect that, if plaintiff had made a contract with the Columbus Club, he would have remained with that club during the 1925 baseball season longer than he remained with the Cleveland Club. The above-recited evidence amply supports this finding. If he had made the contract, a fact which the question presupposes, he would have been bound for the entire 1925 season with an option on his services for the 1926 season. He was anxious to play professional baseball, and the jury could well find that, if the contract had been made, he would have lived up to it, and would have been permitted to continue under it during the contractural period. Neither the fact that he voluntarily left the Cleveland Club, where he was receiving the same rate of compensation, nor the fact that he had a previous contract for September employment under terms not shown by the record, were sufficient to negative as a matter of law the reasonable inference that, if he made the Columbus contract, he would not have continued employment under it beyond August 15, 1925. The Cleveland employment was only at will; he was not a member of, and did not play on, the team; and, when he left, he had accomplished the main purpose of the employment, namely, to obtain a contract for the 1926 season. Neither the terms nor the status of the coaching contract were shown, and the jury might reasonably infer that he would not have sought or become bound upon the Columbus contract if a compliance with its terms would necessarily require that he breach his coaching contract.

In the argument appellant urges two further contentions under this proposition: First, that, having received the Cleveland employment at the same salary as the Columbus offer, and having voluntarily left the former, he can only recover for loss up to the time the former began (July 1st); second, that, having entered upon the coaching employment during the Columbus contract period, he must give credit for what he earned under the former. The answer to these contentions is that there was no pleading to sustain the former, and no pleading or evidence to sustain the latter.

[5] These were matters of defense, as to which the burden both of allegation and proof rested upon appellant, Mansfield v. Nichols (Tex. Civ. App.) 265 S. W. 746, and authorities collated.

There is no pleading that plaintiff could have earned more than he did earn with the Cleveland Club. His employment at $350 a month is alleged, and that "the sum so paid to plaintiff by the Cleveland Club during the period of time plaintiff was with it was equal to or greater than the sum which plaintiff would have received from said Columbus Club during said period of time if he had made contract with it."

[6] Appellant's second proposition complains of the admission in evidence of Reach's 1926 Baseball Guide to the effect that the Columbus Club 1925 season began April 17th and closed September 27th.

In connection with this guide, Wm. J. Disch, university baseball coach, or semiprofessional baseball player since 1898, during which time he had "become fairly familiar with what things were official and regarded as official in baseball," testified:

"This little book handed me is Reach's Guide, which is an official baseball publication. * * * I know from my knowledge of baseball that the records contained in this work are supposed to be correct from year to year. I have not noted any mistakes in any of the guides. This is based upon a comparison of what I know on the outside with certain facts contained in this book. * * * This is an official record as kept from year to year by A. J. Reach and A. G. Spalding, leading men in baseball affairs of the country, and supposed to be the official record of all baseball games. It is accepted as official and correct by the presidents of the American and National Leagues. * * * As to whether I know who is the author of the statement quoted from this guide, showing when the season opened and closed in the American Association, I judge that came from the schedule committee of the American Association. * * * I do not know personally who wrote that, but I know that the American Association season every year opens about the middle of April and closes the latter part of September. * * * I know these articles are usually written by persons who are connected with the association. * * * I have had experience in drawing up schedules."

We hold the guide admissible for the purpose introduced under the following authorities: Telegraph Co. v. Gilliland, 61 Tex. Civ. App. 185, 130 S. W. 212; Railway v. Gunter, 39 Tex. Civ. App. 129, 86 S. W. 938; Ry. v. Slator (Tex. Civ. App.) 102 S. W. 156; Railway v. Isenhower, 62 Tex. Civ. App. 223, 131 S. W. 297; Packing Co. v. Griffith (Tex. Civ. App.) 144 S. W. 1139; Railway v. Johnson (Tex. Civ. App.) 193 S. W. 728, following Railway v. Ransom, 15 Tex. Civ. App. 689, 41 S. W. 826 (writ denied), and Railway v. Morgan (Tex. Civ. App.) 46 S. W. 672 (writ denied).

[7, 8] Additionally: The guide may be eliminated without effect upon the judgment, under the evidence of Disch that the season began in April and closed the latter part of September. Other than the guide, this was the only evidence as to when the season opened and closed, and it was admitted without objection. It established the duration of the season from April until the latter part (beyond the middle) of September. No issue regarding the opening or closing of the season was submitted or requested. The amount of the judgment covers the periods June 10th to June 30th and August 16th to September 6th,

each date included (43 days at 11.66⅔ cents a day). It was not material when the season closed, provided it was not earlier than September 7th. It cannot be said that Disch's evidence had no probative force. It related to a subject of nation-wide interest and notoriety, and of easy and exact ascertainment. Appellee filed a trial amendment February 2, 1926, alleging the 1925 season closed September 27th. Appellant's motion for new trial was filed and overruled March 3, 1927. No complaint was made of the trial amendment and no showing made in the motion or otherwise that this date was not correct. We may reasonably presume, therefore, that the facts shown by the guide were not prejudicial to appellant. Causes should not be reversed when there is no reasonable probability of prejudice. Rule 62a.

Appellant's third proposition presents no little difficulty. It questions the right to interest prior to the date of the judgment, under the quoted stipulation limiting its liability.

[9] Appellee contends that allowance of interest from accrual of liability is admitted in appellant's answer, and cannot be questioned for the first time on motion for new trial. The answer pleads the stipulation as "a separate and partial defense," and alleges that "to hold defendant liable in any event in this action beyond the sum of $500, with interest from June 10, 1925, would be in contravention of" stated provisions of the Constitution and statutes of the United States. This language, we think, construed the contract consistently with the court's judgment, and the ruling complained of was clearly invited. Since, however, the alleged error is one purely of law, and affects only a severable part of the judgment, and may therefore be corrected without further trial or action in the court below, we have concluded not to rest our holding upon this view.

The only case called to our attention construing the stipulation in question is Telegraph Co. v. Davis, 170 Ark. 506, 280 S. W. 977, holding interest not recoverable under the following reasoning:

"Under the contract, the amount of recovery for negligence in transmitting an unrepeated message is the sum of $500.00. Liability for unliquidated damages does not bear interest, but the trial jury may consider the delay and add interest as compensation therefor in addition to the damages sustained at the time of the accrual of the cause of action. St. L., I. M. & S. Ry. Co. v. Cleere, 76 Ark. 377, 88 S. W. 995. The total damages are appraised at the time of the rendition of the judgment, and the restriction is placed in the contract upon the amount of damages to be recovered at that time."

While holding in high esteem the adjudications of tribunals of last resort of a sister state, a careful consideration of the question, and such research as we have been able, with the aid of able counsel, to give it, lead us to a contrary conclusion.

[10] In this state interest eo nomine is recoverable only where allowed by statute (articles 5069, 5070 [Rev. St. 1925]). But it is now the settled law of this state that, where the damages, whether ex contractu or ex delicto, are complete at a definite time, and the amount is determined by fixed rules of evidence and known standards of value, interest is recoverable as a matter of law from date of accrual of the cause of action. Railway v. Jackson, 62 Tex. 209; Watkins v. Junker, 90 Tex. 584, 40 S. W. 11; Atkinson v. Jackson (Tex. Civ. App.) 259 S. W. 280; 28 L. R. A. (N. S.) 1, note.

It is true that interest in such cases is classed as a part of the damages recoverable, as distinguished from interest eo nomine. This distinction is sometimes important in determining jurisdictional amounts, and the right to award interest where not submitted in a charge or found by a jury. In other cases, where it is allowed as a matter of law, the distinction is usually unimportant. The basis for the allowance is as damages for the detention or withholding of compensation. The same basis underlies the statutory allowance "on all written contracts ascertaining the sum payable, from and after the time when the sum is due and payable."

[11] The right of action in the addressee of a telegram, sent for his benefit, is, under our decisions, ex contractu. Western Union Tel. Co. v. Adams, 75 Tex. 531, 12 S. W. 857, 6 L. R. A. 844, 16 Am. St. Rep. 920; Western Union Tel. Co. v. Beringer, 84 Tex. 38, 19 S. W. 336.

[12] In the absence of the limitation stipulation, the liability sued upon would bear interest from its accrual. Western Union Tel. Co. v. Carver, 15 Tex. Civ. App. 547, 39 S. W. 1021 (writ of error denied).

[13] The obligation to discharge that liability at the date of its accrual arises from the breach of contract importing, if not in fact expressing, a promise and consequent obligation to perform a specific act; namely, to use proper diligence in delivery of the message. Default in that obligation creates a liability, to discharge which the contract imports a promise and obligation. The right to recover interest is predicated upon this latter obligation to discharge the liability resulting from the breach of contract of transmission.

[14] Bearing in mind this basis for allowance of interest as damages, the question presented is, What is meant by the language that the company shall not be liable beyond the sum of $500 for the specified derelictions in duty? We think it should be construed as a limitation on liability for the specified derelictions only, and as having no bearing upon the right to recover interest as damages for the detention of compensation for the damages recoverable under the liability to which

the limitation expressly applies. The contention appellant urges would put a premium on delay in the discharge of a contractual obligation, and would impair the value of compensation recoverable proportionate to the length of time required in each particular case to obtain an adjudication.

Contracts of suretyship are construed most favorably in favor of the surety. In other respects the surety's limitation of liability bears some analogy to that at bar. "It is a general rule, and well settled, that sureties are liable only to the extent of the penalty of the bond. But the later and apparently preponderance of authority is to the effect that whenever the penalty becomes a debt due and payable as to the surety, he is as much liable for interest thereon as if he had been originally the principal debtor, not, however, as a part of the debt for which he became responsible, but as damages for its detention, and it is immaterial that the allowance of interest may make the judgment in excess of the penalty named in the bond." 21 R. C. L. p. 1087, § 128. See, also, authorities collated in 22 Ann. Cas. 1194, Note.

In accord with this view is the holding of the United States Supreme Court, the final arbiter of the question at bar, since it concerns an interstate message. United States v. Fidelity Co., 236 U. S. 512, 35 S. Ct. 298, 59 L. Ed. 696. In Mercantile Co. v. Grocery Co. (Tex. Civ. App.) 127 S. W. 1080, while interest was not allowed prior to judgment, the main question presented was the proper construction of a clause of the contract relating to interest and attorney's fees, and interest as damages for detention of amount due by the surety was not discussed.

In Railway v. Muldrow, 54 Tex. 233, it was held, Associate Justice Bonner writing in 1881, that interest prior to judgment was not allowable under the statute (Rev. St. 1879, art. 4245) making railroads "liable * * * for the value of all stock killed or injured" by trains where the right of way was not fenced.

In 1899 the Supreme Court declined to disturb this decision, since it was based upon a legislative act, and subsequent Legislatures had not amended it. Railway v. Chambliss, 93 Tex. 62, 53 S. W. 343. We quote from the opinion by Associate Justice Williams:

"While we would have considerable difficulty, if the question were now presented for the first time, in adopting the view expressed in the Muldrow Case, yet, in view of the facts just stated, we do not feel that we would be warranted in overruling that decision, based as it is, upon language in a statute as to the effect of which minds may well differ.

"No good reason is perceived why the owner of stock thus destroyed should not have the same right that owners of property destroyed or taken by the wrongful act of another generally have, under the decisions of this court, to recover not only its value but damages commensurate with interest for the detention of

the money. But as the statute as heretofore construed fixes a different rule, we think that the remedy should come from the Legislature."

[15] It is to be noted that the Arkansas decision is rested upon the rule in that state that interest on unliquidated damages is only discretionary with the jury or trial judge. That may distinguish the Arkansas case from that at bar. But, whether discretionary or recoverable as a matter of law, the basis of recovery is the same, "damages for the detention of compensation." 17 C. J. 822. We are not in accord with the Arkansas holding that "under the contract the *amount of recovery* for negligence in transmitting an unrepeated message is the sum of $500." The contract does not so read in express language, and we do not so interpret it. It limits *liability*, not the *amount of recovery*. For the considerations above noted we hold this language to mean that liability for the specified derelictions, as of the date of accrual of such liability, is limited; and for the withholding of compensation in satisfaction of that liability interest on the amount thereof up to $500 is recoverable.

The trial court's judgment is affirmed.

Affirmed.