## PACIFIC EXPRESS COMPANY v. M. LOTHROP.

### Decided January 14, 1899.

**1. Evidence of Value—Market Value—Original Cost.**

Where there was no market value at place of destination, evidence against a carrier as to the value of a Berkshire hog in the Berkshire market of Texas, no place in the State being designated where a market value existed for such animal, is admissible, but does not exclude other competent evidence as to its value, such as the cost of the hog, in an action against the carrier for its death before delivery.

**2. Same—Evidence of Sale.**

It is competent upon the question of the value of property at a certain date and place to show actual sales of similar property and the prices realized thereon near the date in question, where the property had no market value there.

**3. Same—Evidence of Pedigree of Animals.**

The pedigree of an animal which has no market value at the place in question can be shown in determining its value there.

**4. Evidence of Negligence—Opinion.**

It is competent, for the purpose of showing negligence on the part of an express company for loss of a hog, for a witness who was present when the hog was unloaded and knew what was proper to be done when hogs became overheated, to testify that the hog was hot and restless, and in his opinion would have returned to his normal condition if the crate had been opened and he had been allowed to walk around a little.

**5. Same—Statements to and by Agent.**

A witness may testify in an action against an express company for the death of a hog transported by it, that he told the agent who was in charge of the hog that it ought to be turned out of the crate, and that the agent refused to do so; but it is not competent for him to testify that the agent stated that "he had it in" for the owner of the hog, as the company was in no way responsible for such statement.

**6. Same—Notification.**

Evidence that an express company had been given timely notice that a hog had been shipped and was expected to arrive, and that the company agreed to give notice to the consignee of the arrival of the hog and had means of doing so by the telephone which connected its office and the owner's residence, and that the company had been in the habit of so using the telephone, is admissible in an action against the company for the death of the hog after arrival but before notification to the owner.

**7. Same—Same.**

In an action against an express company for loss of a hog, the testimony of a witness that he told the night agent of the company to telephone to the owner of the hog that it needed attention, so that the owner could turn him out, and that the agent said he would not do it, and then went off and left the hog with a negro, is admissible to show negligence.

Appeal from the County Court of Harrison.   Tried below before Hon. James W. Pope.

*Pope, Lane & Pope,* for appellant.

*T. P. Young,* for appellee.

RAINEY, Associate Justice.—This suit was brought by appellee against appellant to recover the value of one Berkshire boar hog.   The hog was delivered to appellant company at Bushnell, Ill., to be transported to Marshall, Texas.   The hog reached Marshall, but died before being delivered, and appellee claims its death was caused by the negligence of appellant.

The first assignment of error complains of the court in refusing to permit defendant to prove that plaintiff gave a Jersey heifer for the said hog, and that said heifer was not worth over $100; the proposition being that the hog had no market value in Marshall, Texas, the place of delivery, and it was competent to show the cost of the hog.   All the evidence shows that the hog had no market value in Marshall, but several witnesses testified that the value of the hog was $250 in the Berkshire market of Texas,.   Judgment was rendered for this amount, and we think it apparent that the court based its judgment on the theory that proof of the value of the hog in the Berkshire market of Texas was conclusive of the market value of the hog at Marshall, and therefore excluded the testimony offered by defendant.   The testimony of the value of the hog in the Berkshire market of Texas was too indefinite to conclusively establish the market value at Marshall.   No place in Texas was designated where a market value existed for such an animal. It might indicate that hogs of this kind were occasionally sold in various sections of the State and same might be looked to in arriving at the value, and in the absence of other testimony be sufficient to sustain a verdict, but it was not of such a conclusive nature as to exclude other competent evidence as to the value, there being no established market at Marshall.   The measure of plaintiff's damages if entitled to recover was the value of the hog at Marshall at the time it should have been delivered in a sound condition.   If it had a market value there, proof of that fact would have been conclusive thereof.   But as there was no market value established, other evidence could be resorted to to prove value, limited, of course, to the best evidence possible under the circumstances.   Steinlein v. Blaisdell, 44 S. W. Rep., 200.

Mr. Sutherland, in his excellant work on Damages (volume 2, section 654), says: "If the article in question has no market value, its value may be shown by proof of such elements or facts affecting the question as exist.   Recourse may be had to the items of cost, utility, and use."

Where there is no market value of the article at the place of delivery, resort may be had to evidence showing its value at other places, with

the cost of transportation, or such other facts from which the jury could legitimately determine the value at the place in question. Steinlein v. Blaisdell, supra. Such testimony ought not to be excluded except it be shown that the article has been bought and sold in sufficient quantities or often enough to establish a market value at the place in question. 1 Suth. Dam., par. 445.

If no market value is established at the place in question proof of what the article cost can be given. 2 Willson C. C., sec. 643. This is not conclusive, but can be considered by the jury in determining its true value.

The second assignment of error by appellant relates to the exclusion of proffered testimony that defendant bought, during the year 1896 and 1897, thoroughbred Berkshire boar hogs of as good breeding as the hog in question for sums from $100 to $150.

We are of opinion that the court erred, as it is competent to show actual sales of similar property and the value thereof at other times near the date of the sale of property in question, especially if the property is such as bears a stable rather than a fluctuating price. 1 Suth. Dam., secs. 445-447.

The appellee filed cross assignments of error, a consideration of which is asked in the event the judgment is reversed. As the questions raised by said assignments will probably arise upon another trial, we think it proper to consider them.

The first cross assignment complains of the action of the court in excluding the fourth and fifth interrogatories propounded to N. H. Gentry and his answers to same.

The fourth question is: "What was the pedigree of said hog, if you knew him? Was he a thoroughbred Berkshire or not? Was he registered or not? And what do you mean by his being registered? Do you know what said hog was worth? Do you know what fine Berkshire boars are worth? If you know the value of the animals inquired about, how did you acquire such knowledge?" The answer to said question is: "King Lee II. was sired by Longfellow, 16835, and out of Lady Lee VII., 25107, and was therefore a thoroughbred Berkshire. King Lee II. was registered in the American Berkshire Association, record headquarters at Springfield, Ill., Col. Charles F. Mills, secretary. The record number of King Lee II. is 29801. A certificate of registry from the secretary of the American Berkshire Association bearing his record number is the evidence accepted by breeders in general that he is a thoroughbred Berkshire hog. In order to be eligible to record a hog must descend on both sire and dam's side from recorded stock. I think he was worth $500 because I sold his full brother, King Lee, 27500, which I consider was not quite as good a boar, for $500 at the same age, and I also refused $500 for a full sister to him. I now own a full brother to King Lee II., which I priced lately for $1000, and I believe him to be worth that amount."

The fifth question is: "What was the reasonable fair cash value of

the said King Lee II.?" The answer to said question is: "This interrogatory, I think, has been fully answered in the foregoing."

The defendant objected to said interrogatories and answers, because the question did not limit the witness to any place or time as to the value of the hog, which objection was sustained by the court, and said questions and answers were excluded.

We think the court erred in the particular complained of. We think it clear in determining the question of the value of an animal its pedigree can be shown. Railway v. Dew, 45 S. W. Rep., 790. It was also competent to show by the witness the value of the hog, and we think it sufficiently appears from the interrogatories propounded and the witness' answers, and the other parts of his testimony, that he was testifying as to the value of the hog in Illinois, where he lived at the time when the hog in question was sold to the plaintiff.

The court erred in excluding the testimony of J. W. Young to the effect that the hog was hot and restless when he saw him, and in his opinion would have been entirely relieved and restored to his normal condition if the crate had been opened and the animal allowed to walk around a little. He having testified that he was present when the hog was unloaded in Marshall and knew what would be proper to be done when hogs became overheated. The evidence was competent to show negligence on the part of appellant.

The court also erred in excluding the testimony of said Young that he told the party who was in charge of said hog that it ought to be turned out of the crate, and that said party refused so to do. We think the evidence shows that Holmes, to whom the statement was made, was the agent of appellant. We think, however, that that part of the statement of Holmes "that he had it in for Lothrop, anyhow," was not competent, as it was calculated to prejudice the jury against the appellant, and appellant was in no way responsible for such a statement.

We also think the court erred in excluding the testimony offered by plaintiff tending "to show that appellant, through its authorized agent, had been given timely notice that the hog had been shipped and was expected to arrive; and that appellant had agreed to give such notice of the arrival of the hog, and had means of doing so by the telephone which connected the express office and plaintiff's residence, and that appellant had been in the habit of using the telephone for the purpose."

The court also erred in excluding the testimony of the witness Simpson, "that he told the night agent to telephone to Mr. Lothrop, as the hog needed attention, so that he could turn him out, and that said agent said that he would not do it, and then went off and left the hog with a negro." The evidence offered tended to show the conduct of appellant's agents and employes in reference to the treatment of the hog, and it was proper to go to the jury on the question of negligence on the part of the employes of appellant.

The judgment is reversed and cause remanded.

*Reversed and remanded.*