Fort Worth & Denver City Railway Company v. W. W. Lock.

Decided November 15, 1902.

**1.—Evidence—Privileged Communication—Attorney and Client.**
Where the plaintiff, who was suing for $950 damages caused by injuries to his horses while in transit, was asked, while on the stand as a witness, if he had not instructed his attorney to present his claim to the defendant railroad company for damages for such injuries in the sum of $100, the court properly sustained an objection to the question on the ground that the communication was privileged.

**2.—Live Stock Shipment—Carriers—Evidence—Claim for Damages.**
Where plaintiff's action was for damages to horses during shipment, it was error for the court to exclude from the evidence his written claim for damages in a less sum than was sued for, when offered by the defendant carrier, upon the ground that it was an offer of compromise, since it was competent to contradict plaintiff's testimony as to the extent of the injury to the stock, and the amount of damages he had sustained.

**3.—Same—Degree of Care—Charge.**
A charge holding the defendant carrier liable for damages unless the injuries to the horses were occasioned, "by the act of God, a public enemy, negligence of the shipper, or some vicious propensity of the animals themselves," was erroneous in exacting too high a degree of care, since the carrier was only required to use such care to avoid injury to the horses as a person of ordinary prudence and care would use under the same or similar circumstances.

Appeal from the County Court of Hardeman County. Tried below before Hon. S. J. Osborne.

*Stanley, Spoonts & Thompson,* for appellant.

*B E. Green,* for appellee.

HUNTER, Associate Justice.—Lock sued the railroad company for $950 damages for injuries to two car loads of horses of thirty-one head each shipped from Quanah, Texas, to Monticello, Fla. He alleged that the injuries occurred between Quanah and Fort Worth on appellant's railroad, and by reason of the jerking and lunging of the train, throwing his horses down in the cars, and thus bruising and injuring them. The defense was general denial, and that the horses were weak and poor, and were crowded in the cars. The jury gave a verdict against the company for $400, upon which judgment was rendered, and from which this appeal is taken.

The evidence, as usual, was conflicting, but perhaps sufficient to· sustain a verdict either way.

Three assignments of error complain of the admission of the evidence of three several witnesses to the effect that on the way between Quanah and Fort Worth the plaintiff complained to the conductor strenuously against the rough treatment his stock was receiving by reason of the jerking of the train, saying to him that "he never was so butchered up in his life by a railroad company, and that he would not have a horse alive when he reached the end of his journey." The objection was that this evidence was self-serving and incompetent. The writer, at least, does not think so, but is of opinion that it was part of the res gestae, having occurred at the time the injuries were being inflicted, and was a protest against the acts which produced them, not any more earnest nor ardent perhaps than a Texas stockman will always make when he thinks he is receiving bad treatment. But repeated to the jury as it was by the three witnesses, it almost became, on the trial, a self-serving statement, as the fact that he so stated was uncontroverted, though we do not decide whether it was· or not, as we shall reverse the judgment for other reasons.

On cross-examination the plaintiff was asked if he had not instructed his attorney in this case to present his claim to the railroad company for damages for injuries to his horses in the sum of $100, to which the court sustained objection that the communication was privileged, and this ruling is assigned as error, but we think it was correct.

The court excluded the written claim for damages when offered by the railroad company, upon the objection made that it was an offer of compromise. This was error. ` It was competent to contradict the plaintiff's statements made on the trial as to the extent of the injuries received, and the amount of the damages he had sustained, by showing his written claim made when the injuries and the memory thereof were fresh. It is sometimes said that injuries of the character complained of, when committed by a railroad company, will grow and expand and become more and more aggravated and distressing as the injured party broods over his wrongs, and they, usually continue to increase, it is claimed, up to the time of final settlement of the judgment when solace comes with compensation.

The charge of the court was erroneous in exacting from the company

too high a degree of care. The company was only required to use such care to avoid injuring the horses as a person of ordinary prudence and care would use under the same or similar circumstances. The charge given by its terms held the company liable for damages unless the injuries were occasioned "by the act of God, a public enemy, negligence of the shipper, or some vicious propensity of the animals themselves."

In the closing argument for plaintiff, Mr. Wells addressed the jury as follows: "The railway company has rights that you don't have; it can plow through your yard and move your house; it has unusual rights, and it ought to pay for them." These remarks were objected to at the time as being outside of the record and improper argument, but "the court overruled the objection," as shown by the bill of exceptions, "and declined to stop the said argument, or instruct the jury that it was improper."

Without deciding whether the bill shows reversible error or not, we think it not out of place to declare that the language was improper and the court should have acted promptly in declaring it so, even without objection from the opposite side. Such language, in such a case, is wholly out of place and ought never to be indulged in.

For the errors pointed out the judgment is reversed and the cause is remanded.

*Reversed and remanded.*