WEAPONS (§ 13*)—CRIMINAL PROSECUTION—INSTRUCTIONS.

One believing his life in danger has the legal right to carry a pistol from his residence to his store, and if he used the pistol, thinking his life was threatened, he would not be guilty of an illegal carrying; and hence, in a prosecution for carrying a pistol, where defendant claimed he was carrying it to his store, and that he used it, thinking his life was in danger, his right to use it should have been presented by the instructions.

[Ed. Note.—For other cases, see Weapons, Cent. Dig. §§ 16, 17; Dec. Dig. § 13.*]

Appeal from Johnson County Court; J. B. Haynes, Judge.

Phillip Ellias was convicted of carrying a pistol, and appeals.    Reversed and remanded.

Phillips & Bledsoe, for appellant.    C. E. Lane, Asst. Atty. Gen., for the State.

DAVIDSON, P. J.    The appellant was convicted of carrying a pistol.    The evidence shows that he had a pistol on Main street in the city of Cleburne, and that he fired it at a man named Wineburg.    Appellant's evidence is, in substance, that he lived a short distance away from where he was seen with the pistol, and was pursuing the business of selling fruit, and "ran a banana wagon"; that he was carrying his banana wagon from his residence around to his store, and had the pistol in the banana wagon, in a sack; that his brother was in the wagon with him at the time.    It is further in evidence in behalf of the appellant that Wineburg had threatened to kill him.    This caused him uneasiness.    En route to the store, appellant saw Wineburg coming down the sidewalk.    Wineburg stepped off the sidewalk, as if coming to where he (appellant) was in his banana wagon, either throwing his arm in his bosom, or had it in his bosom; and, thinking he was going to attack him, appellant jumped out of his banana wagon, grabbed his pistol, and fired at Wineburg.    This is a brief, but substantial, statement of the case.    The state proved that appellant had the pistol at the time indicated and fired it at Wineburg.

The court charged the jury, correctly, that appellant had the right to carry the pistol from his house to his place of business.    Appellant properly presents the question, excepting to the charge for failing to give a special charge to the effect that if he believed his life was in danger, and the danger was so imminent and threatening that he did not have time to have the party arrested, the jury would acquit him.    We are of opinion this charge should have been given.    He had a legal right to carry the pistol from his residence to his store.    The mere fact that he thought his life was threatened, and he was in danger of losing it, or of being attacked by a man who had threatened to kill him, and he exhibited and used the pistol under those circumstances, would not constitute it an illegal carrying.    He had a right to carry it from his house to his store, and the fact that he used it to protect his life en route would not make the carrying an unlawful one.

This phase should have been given in charge to the jury, and because it was not the judgment will be reversed, and the cause remanded.

---

### HOUSTON PACKING CO. v. GRIFFITH.

(Court of Civil Appeals of Texas.    San Antonio.    Jan. 24, 1912.)

1. EVIDENCE (§ 361*)—DOCUMENTARY EVIDENCE—PRIVATE PUBLICATION—NEWSPAPER QUOTATIONS.

In an action for damages for breach of defendant's contract to buy a lot of fat steers, newspapers which gave daily reports of sales of stock and quotations of prices, and which were relied on by cattle dealers in general as giving correct reports, were admissible in evidence for the purpose of showing such quotations.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1514; Dec. Dig. § 361.*]

2. WITNESSES (§ 37*)—KNOWLEDGE OF WITNESS—MARKET VALUE.

Persons who derive a knowledge of prices in a certain market from publications of quotations in that market may testify to their knowledge so obtained.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 80–87; Dec. Dig. § 37.*]

3. TRIAL (§ 85*)—RECEPTION OF EVIDENCE—EVIDENCE ADMISSIBLE IN PART.

Where objection is made to the introduction of evidence as a whole, and part of it is not subject to such objection, the overruling of the objection is not reversible error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 223–225; Dec. Dig. § 85.*]

4. EVIDENCE (§ 361*)—DOCUMENTARY EVIDENCE—PRIVATE PUBLICATIONS—NEWSPAPER QUOTATIONS—FORM.

A newspaper item or quotation in the form: "The A. C. Bell Live Stock Commission Co. quotes Houston market as follows:    Steers good to choice $3.75 to $4.00 per cwt."—though showing that the report was obtained from an individual dealer, does not destroy its value as evidence of market prices.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1514; Dec. Dig. § 361.*]

5. EVIDENCE (§ 461*)—PAROL EVIDENCE—EXPLANATORY OF WRITTEN CONTRACT.

In an action for damages for breach of a written contract to purchase cattle that were to be fat, evidence for the seller that, at the time the contract was made, he was told that the cattle to be delivered thereunder need not be so fat as another lot which had been previously contracted for, was not contradictory of the contract, but was admissible as explanatory of it in respect to how fat the cattle in question were expected to be.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2129–2133; Dec. Dig. § 461.*]

**6. EVIDENCE (§ 142*)—COMPETENCY—MARKET VALUE—TIME OF VALUATION.**

In an action for damages for breach of a contract to buy cattle, evidence that cattle shipped by a witness to the same place at the same time brought him a certain price was inadmissible as evidence of value, where it appeared that they were shipped under a contract entered into two or three weeks before that time, which contract had fixed the price.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 416–423; Dec. Dig. § 142.*]

**7. EVIDENCE (§ 113*)—COMPETENCY—MARKET VALUE—MINIMUM PRICE.**

In an action for damages for breach of a contract to buy cattle delivered at a certain place at a certain time, evidence as to the range of prices during a period which included that date, and which showed the minimum market price during that period, was admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 259–296; Dec. Dig. § 113.*]

**8. EVIDENCE (§ 113*)—COMPETENCY—MARKET VALUE—TIME AND PLACE OF VALUATION.**

In an action for damages for the breach of a contract to buy cattle delivered at a certain place at a certain date, in which it was shown that between certain dates, including such date, there was practically no fluctuation in the price of such cattle at that place, evidence of market prices on any date during such period was admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 259–296; Dec. Dig. § 113.*]

Error from District Court, Wilson County; E. A. Stevens, Judge.

Action by W. D. Griffith against the Houston Packing Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Hutcheson & Hutcheson and O. A. McCracken, for plaintiff in error. James A. King, Emil Mosheim, and J. E. Canfield, for defendant in error.

JAMES, C. J. The controversy grows out of sales by Griffith to the Houston Packing Company of certain steers that were to be fat. The petition of Griffith alleged, in substance, that after certain of the steers were shipped and paid for according to the agreement, and the time came for the shipment of the remainder, he notified defendant that he was ready to deliver same and requested its agent to come to Floresville and cut out and accept said steers, which were fat and in proper condition for delivery to the number of 250 head, but said agent refused to cut out and accept same upon the sole ground that they were not fat; that on said date, June 15, 1909, the price of such steers had declined in the market in Houston, Tex., and were not worth more than $3.75 per hundredweight gross, being 85 cents per hundredweight less than the contract price; that the average of said steers was 825 pounds per head; and that plaintiff was damaged in the sum of $1,753.12½, which was the difference between the contract price and the market price at Houston, Tex., the place of delivery, on the 15th day of June, 1909. Besides a

plea of privilege and demurrers (which are not dealt with in the brief), the Houston Packing Company answered by a general denial. There was a verdict for plaintiff for the amount asked.

[1] The assignments of error Nos. 1 to 4, inclusive, are directed to alleged error in admitting in evidence a copy of the Houston Daily Post and a copy of the Houston Daily Chronicle, both of date June 15, 1909; the portions allowed in evidence being the following market quotations of steers in Houston: From Houston Daily Post of date June 15, 1909, issued at Houston, Tex.: "The A. C. Bell Live Stock Commission Co. quotes Houston market as follows: Steers good to choice $3.75 to $4.00 per cwt.; steers common to fair $3.00 to $3.50 per cwt." From Houston Daily Chronicle issued June 15, 1909: Houston, June 15, 1909, market quotations steers: "Steers, good to choice $3.75 to $4.00; common to fair $3.00 to $3.50." Defendant objected to the above for the reasons that said papers were mere hearsay statements; that they did not show that the reports therein were made by authority, or regularly or properly kept, or were so received and vouched for as to constitute them reliable evidence of market values; that there was no showing made as to the manner in which said reports were received and published and kept; that said reports were immaterial and irrelevant and did not throw any light on the issues involved in the case, nor did they tend in such manner, as by law required, to constitute evidence of the market value so as to form any basis for the determination of the merits of plaintiff's claim; that they were fragmentary and unauthenticated, were pure hearsay, and bore such date as made it impossible that they should correctly represent the market for June 15th.

The papers, taken in connection with supporting testimony, were properly admitted.

John Griffith testified, in substance, that for 20 or 25 years he had been dealing in cattle; that he got his information of the Houston market from the papers; that he could see the Houston market in the papers all the time. These reports purported to give the value of beef cattle. Dealers in cattle relied on these reports. As a cattle dealer, he relied on them.

W. D. Griffith testified concerning the two papers: "These are daily newspapers issued at Houston, Tex., and circulated all over Texas. I saw and read these papers on June 15, 1909. They contained the market quotations of Houston, Tex., of steers and other commodities. They are relied upon by the general public, and I have always relied upon such quotations from these papers and have found them correct."

The foregoing testimony evidenced that the said publications were issued daily and published regularly the market conditions in Houston; that such publications were gener-

al in circulation and were accepted and relied on by dealers. This sufficiently accredited the quotations in question for the purposes of evidence.

[2] It has been repeatedly held in this state that persons who derive a knowledge of prices in a certain market from such publications of that market may testify to their knowledge so obtained. If this is so, upon what principle can it be said that the publications themselves are inadmissible? Railway v. Isenhower, 131 S. W. 297; Railway v. Dimmit County Pasture Co., 5 Tex. Civ. App. 186, 23 S. W. 755; Railway v. Donovan, 23 S. W. 736; Id., 86 Tex. 378, 25 S. W. 10; Railway v. Pearce, 82 Ark. 353, 101 S. W. 762, 118 Am. St. Rep. 75, 12 Ann. Cas. 125, and cases there cited.

[3] It is contended, in this connection, that what appears in the Houston Post was no more than an offer or advertisement of the A. C. Bell Live Stock Commission Company, which destroys its value as evidence of market prices. The bill of exceptions shows no such specific objection directing it to the attention of the trial court. Besides this, the objections were directed to both newspapers as a whole, and, one of them being free from such criticism, we could not hold that the court erred in overruling the objection for such reason, under a familiar rule of practice. Railway v. Gunter, 39 Tex. Civ. App. 129, 86 S. W. 938.

[4] However, discussing the question, we think the form of the publication in the Post presented no obstacle to its admissibility. It is difficult to understand how the representatives of the newspaper, in gathering matter for such reports, could be expected to be personally cognizant of the trades, or transactions, or conditions upon which the reports are based. They must, of necessity, obtain their information of such matters, more or less, from those engaged in the business of handling the commodities; and it seems to us that the fact that the report shows that it was so obtained does not detract from its value as evidence.

[5] From the sixth, seventh, and eighth assignments it appears that Bennett, defendant's agent, was asked by plaintiff's counsel: "Didn't you tell Mr. Griffith, at the time the contract was made, that these cattle in controversy here need not be as fat as the other bunch you contracted for, the first ones you took?" And the witness answered, "No." Thereafter the court, over defendant's objection, allowed Wm. Griffith to testify in contradiction of the above. Appellant's propositions in this behalf are to the effect: (1) That the contract being in writing and stating that the cattle should be fat, it was an attempt to vary and add to the terms of the contract to prove that there was a cotemporaneous agreement that these cattle should not be as fat as certain other cattle to be first delivered; and (2) that the witness Bennett could not be thus impeached. This last proposition is doubtless correct, but the real question is the other one. Appellee insists that the testimony was admissible for the purpose of showing how fat the steers in question were expected to be, and we agree with appellee that the testimony was not contradictory of the contract, but explanatory of it in said particular. Kelly v. Robb, 58 Tex. 377.

[6] The ninth complains of excluding a certain answer of witness Kohler, by deposition, to the effect that his steers, such as those in question, brought him $4.80 per hundredweight, delivered in Houston, about June 15, 1909. The exact date he did not have at hand. The objection was that the same witness showed by another answer in his deposition that, while the cattle he had reference to were shipped on the 15th, they were shipped under a contract entered into two or three weeks before that time, which contract had fixed the price. Under these circumstances, the court did not err in excluding the answer.

[7] The tenth complains that the court refused to permit the witness Hotchkiss to testify in answer to an interrogatory, as follows: "What was the market value at Houston, Tex., per hundred pounds for fat Texas steers weighing from 825 to 850 pounds, fed on cotton seed and sorghum during the month of June, 1909, between June 7th and June 27th?" The answer by deposition was: "The market value at Houston, Tex., per hundred pounds (of such steers), between the dates of June 7 and June 27, 1909, was $4.50 to $4.85 per hundred pounds." The objection sustained was that the answer does not state the market price of cattle in Houston on the 15th day of June, 1909, nor is there anything in the deposition elsewhere to qualify it. It is true the answer did not state which of these figures represented the market price of such cattle on June 15th, but it is clear that the answer was testimony of the range of prices during said period, which included the 15th, and showed that the minimum market price was $4.50. The testimony should have been allowed.

The eleventh contends that the answer of the same witness to the fifth interrogatory should have been admitted, which was: "The Houston Packing Company paid for cattle such as you describe, on the 7th of June, 1909, $4.85 per hundred pounds; on June 11th, $4.50 per hundred pounds; on June 16, 1909, $4.85 per hundred pounds. The prices mentioned above are the market prices for cattle in Houston for these days. We did not buy any other cattle in Houston between June 7th and June 20th than these dates." To the above evidence plaintiff objected because it did not state the market price on June 15, 1909; that it states what was done at different dates from June 15th; that there is one date, June 16th, which was after the date these cattle were to be receiv-

ed. The judge qualified the bill by stating that the purchase on the 16th referred to by the witness had been negotiated and price fixed some three weeks previous. Appellant claims in its brief that the qualification is not supported by the record. As we reverse the judgment on another assignment, it does not appear to be necessary to consult the record on this point. A price contracted weeks before the date in question would not be competent evidence of the market value on such date.

[8] However, we observe that it was testified to that between the 7th and 20th of June there was practically no fluctuation in the price of such cattle in Houston. In view of such testimony, it was admissible to introduce evidence of market prices on any date during such period. Express Co. v. Lothrop, 20 Tex. Civ. App. 341, 49 S. W. 898.

The testimony referred to in the twelfth assignment of error was admissible, in view of our ruling on the tenth assignment.

Reversed and remanded.