## ST. LOUIS, S. F. & T. RY. CO. et al. v. J. G. HENDERSON CUT STONE CO.
(No. 11171.)

(Court of Civil Appeals of Texas. Fort Worth.
May 16, 1925. Rehearing Denied
June 13, 1925.)

**1. Carriers ⊛133—Excluding written claim for damages presented before suit held without error.**

In suit for value of certain machinery destroyed in transit, where legal measure of plaintiff's damage was market value of several pieces of machinery broken and not that of substituted pieces later purchased, there was no error in excluding written claim for damages presented by plaintiff which specified articles alleged to have been lost, giving price thereof and including cost of machine work and expense in putting on new parts.

**2. Carriers ⊛135—Measure of damages for goods destroyed stated.**

In suit for damages for goods destroyed in transit, reasonable market value of particular articles destroyed at time and place of destruction was proper measure of damages.

**3. Judgment ⊛240—Judgment against carriers, jointly and severally, held without error.**

In suit against terminal carriers for destruction of certain parts of machinery, where there was evidence of breakage thereof while it was in possession of either one of defendants, and neither offered explanation of how or when damage occurred, judgment against them jointly and severally was without error, particularly where there was no verified denial of allegation that defendants were partners.

**4. Carriers ⊛177(1)—Connecting and terminal carrier bound only for loss occurring on its line.**

Connecting and terminal carriers are bound only for such loss as occurs on their lines.

Appeal from Tarrant County Court; H. O. Gossett, Judge.

Action by the J. G. Henderson Cut Stone Company, a copartnership, against the St. Louis, San Francisco & Texas Railway Company and another. Judgment for plaintiff, and defendants appeal. Affirmed.

Thompson, Barwise & Wharton, Goree, Odell & Allen, Ernest May, and B. V. Thompson, all of Fort Worth, for appellants.

J. E. Mercer, of Fort Worth, for appellee.

CONNER, C. J. This is an appeal from a judgment against the appellants the St. Louis, San Francisco & Texas Railway Company and J. L. Lancaster and Chas. L. Wallace, receivers of the Texas & Pacific Railway, in favor of Albert C. Henderson and other members of a partnership composed of the J. G. Henderson Cut Stone Company, for the sum of $420 as damages for the destruction of certain pieces of machinery, of which a list was attached to plaintiffs' petition. The cause of action grew out of a shipment of stone cutting machinery purchased by the plaintiffs of the Cassville Stone Company at Cassville, Mo., and transported to its destination in Fort Worth, Tex., by an initial carrier and the defendants. The cause was tried before a jury, which rendered a verdict in the amount of the judgment stated, and upon this appeal but two material questions are presented.

[1] Appellants first urge that the court erred in excluding a certain written claim for damages that had been presented by the plaintiffs to a claim agent of the St. Louis, San Francisco & Texas Railway Company, aggregating $285.42. The record discloses that the machinery involved in the shipment in question had been purchased by one of the appellees in Cassville, Mo., for transportation and delivery to the stone cutting company in Fort Worth; that upon its arrival in Fort Worth one of the members of the stone cutting firm was notified of its arrival by the St. Louis, San Francisco & Texas Railway Company, and demand made upon him for the payment of the freight in the sum of $441; that he paid said freight bill, and was thereupon permitted to examine the shipment which he found to be in apparent good order; that upon the occasion of the examination a string of cars was shunted against the car of machinery by a switch engine of the company last named with such violence as to break parts of the machinery; that after final delivery at the plant of the stone cutting company the articles, for the loss of which suit had been instituted, were found to be broken and useless; that thereupon he went to dealers handling new and secondhand machinery of the kind and to junk yards, and purchased articles similar to those destroyed in order to be able to utilize the whole in their stone cutting business.

The appellees offered further evidence showing that there was a market value in Fort Worth for articles of the kind and character broken, and that the market value of the articles so broken and destroyed aggregated more than $500, and it was in such a setting of the evidence that appellants offered the written claim of damages referred to. The claim specified articles similar in number and character to those alleged in the plintiffs' petition to have been lost, giving the price of the several articles, and further including the cost of certain machinery work in making a bore and key set for a flywheel, machinery work for pulleys, time hunting parts, and in taking off broken and putting on new parts, the whole aggregating, as stated, the sum of $285.42.

In support of appellants' contention that the court erred in excluding this statement,

the cases of F. W. & D. C. Ry. Co. v. Lock, 30 Tex. Civ. App. 426, 70 S. W. 456, and St. L. S. W. Ry. Co. v. Smith, 33 Tex. Civ. App. 520, 77 S. W. 28, are cited. The Lock Case is one in which the plaintiff Lock sued for damages in the sum of $950 to a shipment of horses, and it was held that his written claim on this account presented to the railway company before suit, in the sum of $100, was "competent to contradict the plaintiff's statements made on the trial, as to the extent of the injuries received, and the amount of the damages he has sustained." The Smith Case, in circumstances and principle, is similar to the Lock Case, which is cited in support of the decision. In both cases the written statement related to the identical subject-matter of the suit, and was held to be competent as tending to contradict the plaintiff's statement as a witness relating to the same subject.

But we think these cases are clearly distinguishable from the one now before us. Here the legal measure of plaintiffs' damage was the market value of the several pieces of machinery broken and not that of the substituted pieces later purchased. See G. H. & S. A. Ry. Co. v. Ball, 80 Tex. 602, 16 S. W. 441; H. & T. C. Ry. Co. v. Jackson, 62 Tex. 209; G. H. & S. A. Ry. Co. v. Efron (Tex. Civ. App.) 38 S. W. 639; G. C. & S. F. Ry. Co. v. Cleburne Ice & Cold Storage Co. (Tex. Civ. App.) 79 S. W. 836. We fail to find that the plaintiff, who made out and presented the written claim, testified on the subject of the market value of the particular parts of the machinery that had been destroyed; the market value of these articles having been, established by other witnesses. The plaintiffs' testimony was to the effect that the written claim had reference to the pieces of machinery and prices he paid therefor, in Fort Worth to secondhand dealers and junk yards, that were not involved in the shipment in controversy. The written statement under consideration therefore cannot be considered as contradicting plaintiff as a witness or as competent evidence of the market value of the destroyed machinery. It is true it has been held in cases where there was no market value that prices paid for similar articles at the time and place in question were competent evidence of the intrinsic value of such articles. See Pac. Exp. Co. v. Lothrop, 20 Tex. Civ. App. 339, 49 S. W. 898. But the rule is otherwise where there is a market value, as was undoubtedly shown in this case by witnesses, both for the plaintiffs and defendants, whose qualification to speak on the subject was not questioned. Miller & English v. Jannett & Franke, 63 Tex. 82; T. & P. Ry. Co. v. Payne, 15 Tex. Civ. App. 58, 38 S. W. 366; G., C. & S. F. Ry. Co. v. Roberts (Tex. Civ. App.) 85 S. W. 479.

We think, as properly observed in the trial court's explanation to the bill of exceptions taken by appellants at the time of the rejection of the claim, that—

"This is a suit brought by plaintiff against defendants for the value of parts of machinery broken and destroyed in transit each of such parts being of such size and weight to form a balanced machine for the purpose designed. Each of such damaged parts having a reasonable market value at the time and place of their destruction, the measure of damages would be such value of such finished and fitted parts, and cannot consistently come within the rule of 'the sum for which like goods are at the time commonly bought and sold in the market,' the substituted articles not being like, but with such difference that they could not be used as substitutes without material and labor, and with this done the articles in question would not be like the damaged articles, neither would they be of the value of the damaged articles at the time and place of their destruction, but would still be substitutes of a different value."

[2] We accordingly hold that the court did not err in excluding the written statement under consideration, and that he in his charge properly applied the well-established rule that the reasonable market value of the particular articles destroyed at the time and place of destruction was the proper measure of plaintiffs' damage.

[3] Under appellants' third and fourth assignments of error objection is made to the form of the judgment. The judgment in the amount stated was against the defendants "jointly and severally." The bill of lading for the shipment in question was executed by the Cassville-Exter Railway Company, and described the property to be shipped, declared it to be in apparent good order, and consigned the shipment "to order of Cassville Stone Company, notify A. C. Henderson Cut Stone Company at Fort Worth, Texas, route F. C. O. T. P. delivery." The shipment was conceded to be an interstate one, and both by the bill of lading and under the evidence the defendant companies were apparently the terminal carriers. They joined in defending the suit, in presenting the case in this court; and in propositions presented under the assignments raising the question now under consideration appellants apparently assumed the position of joint terminal carriers, and hence may be so treated.

The evidence mentioned to the effect that upon the arrival of the shipment in Fort Worth the appellant St. Louis, San Francisco & Texas Railway Company notified the plaintiff company of the arrival of the goods, and Albert C. Henderson, of the firm, at once responded and paid the freight demanded, and went to the yards of that company, and examined the machinery, and found it to be in good order, but while there witnessed a character of rough handling which broke parts of the machinery, authorized the jury, in the absence of explanation, to find that

company guilty of negligence which resulted in the destruction of the whole.

[4] The evidence is to the further effect that there was other switching in the yards of that defendant, and that on the morning after the car was delivered, presumably by the operatives of the Texas & Pacific Railway Company, at the place of its final destination on the yards of the plaintiff company, other pieces of machinery were found to be broken not noticed at the time of the rough handling mentioned, and no effort seems to have been made by the receivers of the Texas & Pacific Railway Company to show that, while the shipment was in its possession and control, it had been handled with due care and without injury to any other parts involved in the shipment; nor did the other appellant attempt to offer any explanation or defense to the action of its employés in roughly handling the shipment. Under such circumstances, we do not think the rule invoked by appellants applicable. Their contention is to the effect that, where suit, as here, is not instituted against the initial carrier, but only against a connecting and terminal carrier, the connecting and terminal carrier is bound only for such loss as occurred on the line of the connecting and terminal carrier, and that neither is bound for a loss occurring on the line of the other, and, hence, that the judgment in this case was erroneous in making each of the terminal carriers in this case liable for the whole damage. The general rule is undoubtedly as thus stated. See 10 Corpus Juris, p. 544, § 897b, and Texas cases cited under note B.

In the case of J. L. Lancaster and Chas. L. Wallace, Receivers of T. & P. Ry. Co. v. Norris, Trustee, et al. (No. 10868) 271 S. W. 401, in an opinion handed down by this court on November 29, 1924, not yet [officially] published, we quoted with approval the following from the case of G., C. & S. F. Ry. Co. v. Holder, 10 Tex. Civ. App. 223, 30 S. W. 383:

"Where goods are delivered to a common carrier to be carried by a series of connecting lines to the point of destination, and the goods are delivered in a damaged condition to the consignee, the shipper must show, in an action against the last carrier, that the goods were delivered in a good condition to the first. The last carrier must then show affirmatively that the goods were not injured on its line. The presumption is that the goods continue in the condition in which they were when the shipper parted with them."

In the same case, on a motion for rehearing (271 S. W. 406), in an opinion filed by this court on February 7, 1925, not yet [officially] published, we held, upon the authority of the case of Burd v. Ry. Co. (Tex. Com. App.) 261 S. W. 921, that in interstate shipments the initial carrier under federal laws was liable as a matter of law for negligence shown on the part of the terminal or any intermediate carrier, but that a plaintiff in an interstate shipment is not compelled to sue the initial carrier, but may, if he chooses, rely upon the terminal or any intermediate carrier. Chicago & N. W. Ry. Co. v. Whitnack Producing Co., 258 U. S. 369, 42 S. Ct. 328, 66 L. Ed. 665. As also held by us in the case of Fort Worth & Denver City Ry. Co. v. Ryan (No. 10921) 271 S. W. 397, in an opinion not yet [officially] published.

In the Norris Case no negligence or damage as a result thereof was affirmatively shown on the part of the intermediate carrier, nor even on the part of the terminal carrier, the receivers of the Texas & Pacific Railway Company, and under that state of facts this court held that the intermediate carrier should be discharged, but that the initial carrier was liable as a matter of law, and that the terminal carrier was because of the fact that it had been shown that the merchandise was in good condition when shipped and in bad condition when delivered; there being an absence of evidence on its part that the damage was not done on its line.

But in the case before us, however, if we assume that the St. Louis, San Francisco & Texas Railway Company was strictly an intermediate carrier and not a terminal carrier, the evidence shows affirmatively acts of negligence on its part which were sufficient to authorize a jury to conclude that it was liable for the whole damage. It was certainly shown that at least a part, if not the entire, loss sustained by the plaintiff in this case was because of the breakage of parts of the machinery by negligence on its part, and hence, in order to escape liability in whole or in part, it developed upon said company to show that such damage as it disputed its liability for occurred on another line. Simply showing that the articles were damaged to some extent when devolved by it to another carrier will not alter the case. See G., C. & S. F. Ry. Co. v. Edloff, 89 Tex. 454, 34 S. W. 414, 35 S. W. 144. So, too, must the receivers of the Texas & Pacific Railway Company be held. These appellants classified themselves as terminal carriers. The goods were in an undoubted damaged condition by being broken and destroyed when delivered to appellees and no effort on its part was made to show that it was not guilty of negligence, either of omission or commission, which contributed to appellees' loss; it being, under such circumstances, and under the well-settled rule already referred to, presumptively liable for the entire damage. Moreover, Albert C. Henderson testified to the effect that at the time of the rough handling already mentioned he noticed that as a result thereof some of the machinery was broken, and he found that additional parts were broken when the shipment was unloaded the next morning; thus affording an inference that at least a part of the damage was done by the operatives of the Texas &

Pacific Railway Company. During this period the machinery was in the sole possession of either one or both defendants, and neither offered any explanation of how or when the damage occurred, as was evidently within their power to do. We also note in this connection that the plaintiffs alleged that the defendants were partners, and we find no verified denial of this allegation in the answer of the receivers.

Such being the state of the record, we fail to see how either appellant has just cause to complain of the fact that the judgment in appellees' favor had been rendered against them jointly and severally. See G., C. & S. F. Ry. Co. v. Edloff, 89 Tex. 454, 34 S. W. 414, 35 S. W. 144. The assignments of error relating to this subject therefore are overruled, and, no other question having been presented save those discussed, the judgment will be affirmed.

## On Motion for Rehearing.

We have considered appellants' motion for rehearing. Particular complaint is made that we failed to consider appellants' second assignment of error, in that we should have held that appellants' counsel should have been permitted to interrogate the witness Smith on cross-examination with respect to what he paid for pieces of machinery similar to those lost in transit. If counsel for appellants will examine their brief filed in this case, it will be seen that they presented and discussed the first, second, third, and fourth propositions under which the contention was presented that the claim filed by the plaintiff, Henderson, with the St. Louis, San Francisco & Texas Railway Company should have been admitted, and under the same propositions and in the same connection further reference is made to the testimony of witness Smith relating to market values. It will be observed that the complaint of the court's action in excluding the claim presented to the railway company and the complaint of the court's action in refusing to permit the alleged cross-examination of the witness Smith are distinct questions, and have but little, if any, relevancy one to the other, and it is quite clear, we think, as announced in the original opinion, that the claim of damage was not admissible for the purpose of impeaching the witness Henderson. So that, it would seem, we could not logically sustain the entire complaint made under the grouping of the propositions stated. Moreover, the contention that the substituted articles referred to in the testimony were the same as those broken is true in part only. As to a number of the pieces, and perhaps those more expensive, they clearly appear not to have been the same as those broken, and no attempt in the cross-examination appears to have been made, so far as shown in the bill of exception, to segregate or point out with particularity the particular pieces that were identical or similar to those broken. So that on the whole, we failed to see, and yet fail to see, that the error as complained of under these propositions was of that prejudicial character which would require a reversal of the judgment. For, as pointed out in our original opinion, not only the witness Smith but also witnesses in behalf of appellants testified to the fact that there was a market value for the pieces of broken machinery in question, and it may be seen by a computation of the figures given that the jury in assessing the plaintiff's damages assessed a value for the broken articles at considerably less than the market value as given by the witness Smith. It is to be remembered in this connection that the appellant St. Louis, San Francisco & Texas Railway Company was given the opportunity of discharging its liability by the payment of the small sum specified in the claim presented, and its deliberate refusal to pay this claim, which the evidence undoubtedly shows was less than the plaintiff had the legal right to demand, does not place said appellant in a very favorable position for the sympathy of the court.

We think the motion for rehearing should be overruled.