fact that such laudible purpose may have worked to the detriment of one tried by a jury who heard the judge's criticism relative to the suspended sentence law, and its operation and abuse. For observations of this court heretofore relative to similar matters, we refer to McMahan v. State, 61 Tex. Cr. R. 489, 135 S. W. 562; Dean v. State, 58 Cr. R. 98, 124 S. W. 924; Drake v. State, 65 Tex. Cr. R. 282, 143 S. W. 1160; Murphy v. State (Tex. Cr. App.) 57 S. W. 967.

Having concluded, upon a re-examination of the matters referred to, and a further investigation of the authorities, that we were in error in our original opinion in the particulars herein discussed, the motion for rehearing is granted, the judgment of affirmance set aside, and the judgment of the trial court reversed and the cause remanded.

---

**HOUSTON PACKING CO. v. CUERO COTTON OIL & MFG. CO. (No. 8122.)**

(Court of Civil Appeals of Texas. Galveston. April 26, 1922. Rehearing Denied May 18, 1922.)

1. **Sales** &#9758;84—Contract construed as in force when buyer notified seller that unless oil was loaded in 48 hours other oil would be bought to fill contract.

The terms of a contract construed as being in force at the time the buyer notified the seller that, unless the car of oil was loaded in 48 hours, buyer would buy for the account of seller a car of oil to fill its contract unless seller had theretofore in time and manner as provided canceled the contract.

2. **Customs and usages** &#9758;19(3)—Decision that contract was not canceled by correspondence held supported by sufficient evidence.

Finding that there was no custom among those dealing in cotton seed products, that notice by seller to buyer that another had refused to load the car of oil bought except at the then market price was a notice that the sale contract was canceled, *held* supported by sufficient evidence.

3. **Sales** &#9758;225(4)—Buyer held not to have transferred rights to third persons so as to prevent his suit for breach of contract.

Evidence *held* not to show that buyer had sold all its interest in sale contract to a third person to whom the oil was to be delivered, so that buyer had not transferred its cause of action for breach of contract to such third party.

4. **Sales** &#9758;418(7)—Buyer held to have reasonable time after notice in which to purchase oil after seller's failure to deliver.

Where buyer had right, upon seller's failure to deliver oil, to purchase other oil after giving 48 hours' notice of his intention to do so, buyer had a reasonable time after the expiration of the 48 hours' notice to purchase the oil,

and, in the absence of evidence relative to opportunities to purchase, 2 or 3 days will not be held an unreasonable time in buyer's action for the difference between the price paid for such oil and contract price.

5. **Witnesses** &#9758;255(1)—Witness may refresh his memory as to market price from market quotations regularly issued.

A witness testifying to the market price of a mercantile commodity on a certain day may refer to and refresh his memory from market quotations regularly issued as to the particular price of such commodity.

6. **Witnesses** &#9758;255(4)—May refresh recollection as to price by reference to circular of United States Food Administration.

A witness may refresh his recollection of certain facts by written memoranda which he knew showed the truth relative to such facts, or matters, if by such assistance his recollection can be stimulated and refreshed so as to make it a distinct and actual present recollection, and it is not necessary that such memoranda shall have been written by witness, so that a witness might refresh his memory as to prices fixed by reference to the circular of the United States Food Administration.

Appeal from District Court, De Witt County; John M. Green, Judge.

Suit by the Cuero Cotton Oil & Manufacturing Company against the Houston Packing Company. Judgment for plaintiff, and the defendant appeals. Affirmed.

See, also, 220 S. W. 394.

Hutcheson, Bryan & Dyess, of Houston, for appellant.

Bailey & Wallace, of Cuero, for appellee.

LANE, J. On the 27th day of September, 1919, the appellant, Houston Packing Company, hereinafter called the packing company, sold to the appellee, Cuero Cotton Oil & Manufacturing Company, hereinafter called the Cuero Company, one carload, of 160-barrel capacity, prime crude cotton seed oil.

The contract for the purchase and sale of said oil contained, among other unimportant conditions, the following:

"Shipment to be made January, 1918.

"Price: Dollar thirteen cents per gallon, f. o. b. T. C. P.

"Terms: Demand draft * * * on Cuero Company for full amount of invoice without exchange.

"Shipment to be made in purchaser's tank cars and routing to be upon purchaser's directions."

The contract also contained the further provision as follows:

"The present rules of the Texas Cotton Seed Crushers' Association regulating transactions in cotton seed products—modified by the foregoing specific terms and conditions—to be part of this contract and, subject to such modifica-

tions, all differences which arise are to be settled in accordance with said rule."

The parts of the rules referred to in the contract, relevant and material to matters under investigation, were in substance as follows:

Rule 27 provides that, in case the car to be furnished by the buyer for the shipment is disabled or lost, another shall be substituted by the buyer within 48 hours of receipt of information of such disability or loss; but delays consequent upon such disability or loss shall not impair or affect contracts where it can be shown that the buyers made such substitution; that when oil is sold f. o. b. common points in buyer's cars, seller routing, the buyer must furnish seller with destination before seller is required to give location and routing.

"Declaration of destination of oil must be furnished the seller ten days previous to expiration of contract and seller must declare point of origin at same time; this ten-day clause applies to specified shipments only. Failure on part of either party to comply with this rule shall immediately give other party right to cancel or resell product as outlined in the Rules of the Association."

Rule 28 provides that specific shipments of oil in buyer's cars shall be made within the time specified in the contract, but it is understood that for any such shipment of oil the cars shall be forwarded in such time that under the ordinary course of transportation they should reach the town from where the shipment is to be made before the expiration of the contract, but, if shown that the car or cars were so forwarded and were delayed through no fault of buyer, then time of shipment shall be extended 48 hours from date car does arrive, and the seller shall load and ship in accordance with rule 32. The seller shall have 48 hours after the car arrives at the point of shipment, and after it is placed at his mill, in which to load and ship.

"Rule 29. Buyer shall notify seller when tank cars are forwarded, giving location of car, with number and names, * * * and follow up such notice with railroad receipt or bill of lading within five days from date of forwarding cars, except where railroads refuse to issue same. Railroad records shall determine date of forwarding.

"Rule 30. Failure on the part of buyer to forward tank cars, as required in rule 27, and give due notice of forwarding, shall entitle the seller, at his option, to cancel the contract at the expiration of the contract time, by giving the buyer telegraphic notice of cancellation. * * * But in case of forwarding tank cars for specified shipment, when it is shown that the tank cars were forwarded in due time as above specified, and delayed en route, the seller must fill them, charging the buyer two dollars per day per tank car as above specified, and the buyer must accept them, under the contract. In case the seller elects to cancel, he must, after he has acquired the right to cancel any contract, or part thereof, immediately notify the buyer by wire of his intention to do so, it being understood that the contract is in force until such notice of cancellation has been given by the seller, and that the provisions of this rule apply to the movements of individual tank cars, and delay in regard to any number of tank cars embraced in one contract shall not influence action in regard to such tanks as may have been forwarded in proper time. Failure to give such notice shall operate as a renewal of the contract and shall extend the time of same as many days as seller allows to lapse before giving notice."

"Rule 31. If, after the car has been placed at the mill from which the shipment is to be made, the seller fails to load the same within 48 hours after the expiration of the contract time of shipment, the buyer shall have the right to cancel the contract or to purchase the quantity of oil due on the contract for the account of the seller at the lowest obtainable price, through any cotton oil broker in good standing, holding the seller for loss sustained.

"Note.—It must be understood that this Rule is intended only for the protection of the buyer after his tank cars have arrived at the mill, and in no case shall be taken to extend the time limit or interfere with the measure of damages that may arise under the contract."

On the 4th day of January, 1918, the Cuero Company, by letter of that date, notified the packing company that it had sold the car of oil in controversy to the Magnolia Provision Company of Houston, and requested the packing company to advise it where and when it should forward the empty car to take up same.

On January 7, 1918, evidently before it had received the letter above mentioned, the packing company wrote the Cuero Company a letter in which they referred to the car of oil, sold under the contract of September 27, 1917, and said:

"We tender you on this contract one tank prime crude, purchased from Farmers' Cotton Oil Company, Winnsboro, Texas. We would request that you advise promptly where this oil is going so that we can give them instructions. They will draw on us for our purchase price from them and we will then make draft on you for the amount of our selling price to you."

After the Cuero Company had purchased the car of oil in controversy from the packing company, the packing company purchased a car of oil from the Farmers' Cotton Oil Company of Winnsboro to deliver to the Cuero Company in satisfaction of its purchase from the packing company, as is shown by its letter of the 7th day of January, 1918, above quoted. And after said purchase the Cuero Company sold a car of oil of like kind as that purchased by it from the packing company to the Magnolia Provision Company of Houston, and the Magnolia Company sold it to the Planters' Oil Company of Waxahachie, who in turn sold it to Proctor & Gamble Company of Ohio.

On the 23d day of January, 1918, the packing company wrote a letter to the Farmers' Cotton Oil Company of Winnsboro, a carbon copy of which was sent to the Cuero Company, which reads as follows:

"Houston, Tex., Jan. 23, 1918.

"Farmers' Cotton Oil Company, Winnsboro, Texas—Gentlemen: P. C. No. 1949—S. C. No. 1791. We are in receipt of carbon copy of letter of Jan. 21st, relative to one tank prime crude cotton seed oil which we bought from you through Yepp contract dated Dec. 4th, and which we declared to the Cuero Cotton Oil & Mfg. Co., who in turn declared to Magnolia Prov. Co., and they to Planters' at Waxahachie, who have it sold to Proctor & Gamble Co.

"If the procedure outlined by the Magnolia Prov. Co. is satisfactory to you, please advise us. It meets with our approval.

"Yours truly,   Houston Packing Company."

On the 30th day of January, 1918, the Farmers' Cotton Oil Company wrote the packing company as follows:

"Winnsboro, Tex., Jan. 30, 1918.

"Houston Packing Company, Houston, Texas—Gentlemen: Further referring to Yepp contract of Dec. 4, 1917, in which we sold you January oil at $1.25 per gal., and which seems to have been traded all around the world, we desire to advise that we made requisition for this tank early in Jan. and have insisted that it be forwarded, and the last information that we had, it had been traded to Proctor & Gamble and that they would be unable to furnish Jan. tanks and was asking for extension which was impossible for us to grant as we have already been shut down for want of storage capacity but to our surprise we have received letter of instructions and number of tank which seems to have been forwarded Jan. 24th to us, and which we feel cannot reach us during the life of this contract, however, if it should, we will load, and if not, under the interstate rules, said contract becomes null and void.

"Trusting that you will take this up at once with Proctor & Gamble Co., as they are not known to us in this connection, we are,

"Yours very truly,
"Farmers' Cotton Oil Company."

On the 1st day of February, 1918, the packing company wrote the Cuero Company as follows:

"Houston, Tex., Feb. 1, 1918.

"Cuero Cotton Oil & Mfg. Co., Cuero, Texas—Gentlemen: P. C. No. 1949—S. C. No. 1791. We are to-day in receipt of letter from Farmers' Cotton Oil Company Winnsboro, Texas, under date of Jan. 30th, as per copy attached, relative to one tank prime crude cotton seed oil which we declared to you on our sale to you on Sept. 27th through E. H. Terrell & Co., and this is to give you official notice of the intention of Farmers' Cotton Oil Company relative to the delivery of this oil.

"We would suggest that you advise Proctor & Gamble immediately, so as to avoid any unnecessary delay to the tanks or further complications on this contract.

"Yours truly,   Houston Packing Company."

On the same day, that is, February 1, 1918, the Cuero Company sent the packing company a telegram reading as follows:

"Cuero, Texas, 11:01 A. M., February 1, 1918.

"Houston Packing Company, Houston, Texas. Magnolia advises tank nineteen seventy-five forwarded Winnsboro by Proctor and Gamble on twenty-fourth.

"Cuero Cotton Oil & Mfg. Co."

After the receipt of the telegram next above set out, the correspondence set out below followed:

"Houston, Texas, 2—4, 1918.

"Farmers' Cotton Oil Co., Winnsboro, Texas. P. & G. tank 1975 forwarded January 24th for crude cotton seed oil our purchase December 4th, Yepp. Will you load tank on arrival as per contract. Obedient. [Signed] Houston Packing Company."

"Winnsboro, Texas, 2:00 P. M., Feb. 6, 1918.

"To Houston Packing Co., Houston, Texas. Will not load tank except at market price to-day.         Farmers' Cotton Oil Co."

"Houston, Tex., 2/6/1918.

"Cuero Cotton Oil & Mfg. Co., Cuero, Texas. Farmers' Winnsboro wire will not load P. & G. tank except at market price to-day.

"[Signed]  Houston Packing Company."

"Houston, Tex., Feb. 6, 1918.

"Cuero Cotton Oil & Mfg. Co., Cuero, Texas—Gentlemen: P. C. C. No. 1949—S. C. No. 1791. We to-day wired the Farmers' Cotton Oil Co., Winnsboro, Texas, as follows: 'Proctor & Gamble Co. tank 1975 forwarded January 24th for 1 tank prime crude C/S oil our purchase December 4th Yepp, will you load tank on arrival per contract? On receipt of this please telegraph.'

"And we are now in receipt of their reply as follows: 'Winnsboro, Texas, 2:00 P. M. 2–6–1918. Houston Packing Company, Houston, Texas. Will not load tank except at market price to-day. [Signed] Farmers' Cotton Oil Company.'

"We transmitted you this information by wire to-day as follows: 'Farmers' Winnsboro wire will not load P. & G. tank except at market price to-day.'

"Please advise Farmers' Cotton Oil Co., Winnsboro, at once your intention regarding this oil.

"Yours truly, Houston Packing Company."

"Feb. 21, '18.

"To Houston Packing Company. Referring Terrell contract tank 1975 now at Winnsboro. Unless loaded within forty-eight hours will buy in for your account holding you for loss.

"[Signed]  Cuero Cotton Oil & Mfg. Co."

"February 22, 1918.

"To Cuero Cotton Oil & Mfg. Co. Your message relative tank Winnsboro received six p. m. yesterday transmitted to Winnsboro and have traced. Three thirty P. M. to-day no reply to tracer.

"[Signed] Houston Packing Co."

"Houston, Tex., Feb. 22, 1918.

"Cuero Cotton Oil & Mfg. Co., Cuero, Texas—Gentlemen: P. C. No. 1949—S. C. No. 1791. We have your message of the 21st inst.

reading as follows: 'Referring Terrell contract tank 1975 now at Winnsboro unless loaded within forty-eight hours will buy in for your account holding you for loss,' and we have passed this on to the Winnsboro Cotton Oil Company, wiring them as follows: 'Cuero wires us "referring Terrell contract tank 1975 now at Winnsboro unless loaded within forty-eight hours will buy in for your account holding you for loss." Answer.' As soon as we receive their reply, will transmit it to you.

"Yours very truly,

"Houston Packing Company."

On February 23, 1918, the Farmers' Company, in reply to the telegram from Houston Packing Company of February 22, with reference to tracing of car 1975, telegraphed as follows:

"Telegram yesterday to Winnsboro mill not received until to-day. 1975 loaded yesterday."

Upon receipt of the above telegram from the Farmers' Company the Houston Packing Company, acting under the mistaken belief that this inquiry for tracing car 1975 had come from the International Mill of Houston, conveyed this information to them instead of the Cuero Company.

On February 25, 1918, after discovering this error, the Houston Packing Company telegraphed to the Cuero Company as follows:

"Houston, Tex., Feb. 25, 1918.

"To Cuero Cotton Oil & Mfg. Co., Cuero, Texas. Following telegram received from Farmers' Winnsboro Feb. Phœnix (23) telegram yesterday to Winnsboro mill not received until to-day. Nineteen seventy-five loaded yesterday. This information was given the International Mill, Houston, instead you through error. We interpret it that contract has been completed. Houston Packing Co."

Before receiving the telegram from the packing company next above set out, the Cuero Company, contending that it had received no notice of cancellation of the contract by the packing company, and that the contract was in force and effect on the 21st day of February, 1918, at which time the Cuero Company had notified the packing company that, unless the oil sold by it to said Cuero Company was delivered within 48 hours, the Cuero Company would buy in for the account of the packing company one car of oil of the kind sold by it, holding it for any loss sustained by the Cuero Company, and contending further that the packing company had not within 48 hours delivered the oil sold by it to the Cuero Company, after receipt of said notice, they, the Cuero Company, through John H. Hailey Company, cotton oil brokers, purchased from the Victoria Manufacturing Company, for the account of the packing company, a car of oil of like kind as that sold to it by the packing company at $1.31¼ per gallon, and so notified the packing company.

At 2:52 o'clock on the 25th day of February, 1918, the packing company wired the Cuero Company as follows:

"February 25, 1918.

"To Cuero Cotton Oil & Mfg. Co. We are just advised by Magnolia that you have bought in one tank prime crude cotton seed oil from Winnsboro $1.31¼ account Terrell contract September 27th, account Winnsboro canceling contract, etc., due to delay in delivery of tank. This is to give you official notice that we will not pay draft for more than our contract price with Winnsboro crawling.

"[Signed] Houston Packing Company."

On February 27th, J. H. Hailey Company, brokers, wrote the Victoria Company the following letter:

"Houston, Tex., Feb. 27, '18.

"Victoria Mfg. Co., Victoria, Texas—Gentlemen: In accordance with exchange of communications we beg to confirm having this day sold for your account to: Cuero Cotton Oil & Mfg. Co., Cuero, Texas, (A/C whom concerned) one (1) tank 160 brls. prime crude cotton seed oil at seventeen and half cents (17½c) per pound Feb. Tex. Com. Points.

"Shipment: Immediate.

"Tank, cars and routing: To be furnished by buyer.

"Terms: Sight draft, free of exchange to buyer, bills of lading attached, for full amount of invoices, weight and quality guaranteed at destination.

"Commission: 10c per brl. To be paid by sellers.

"This contract is made subject to the rules of the Texas Cotton Seed Crushers' Association —made in triplicate; one copy being sent to the seller, one copy to the buyer, and one copy retained on file in this office.

"Very truly yours,

"John H. Hailey Company,

"[Signed] J. H. Hailey, as Broker Only."

The difference in the price of the car of oil at which it was sold by the packing company to the Cuero Company and the cost of the car of oil purchased by the Cuero Company was $1,460.

This suit was brought by the Cuero Company against the packing company to recover judgment for the sum of $1,460, with interest thereon from the 1st day of February, 1918; said $1,460 being the difference between the price at which the oil was sold by the packing company to the Cuero Company and the price paid by the Cuero Company to the Victoria Company for the oil purchased by it to take the place of the oil which the packing company failed to deliver upon its contract.

The defendant answered by general denial, and specially alleged that the Cuero Company had failed to comply with the terms of the contract between the parties, in that neither it nor any of the subsequent purchasers of the oil from it gave the defendant notice of the name of the party to whom the oil was to be shipped, nor notice of the

forwarding of a car to receive the oil 10 days prior to the expiration of the contract period, to wit, 10 days before midnight of the 31st day of January, 1918; that in fact the car to receive the oil was not forwarded within the time required by the contract, nor at such time that under the ordinary course of transportation it could have reached the initial point of shipment before the expiration of the contract period, as is required by the rules of the Texas Cotton Seed Crushers' Association, made a part of the contract between the parties to this suit; and that, by reason of the delay in forwarding said car, it did not reach the place from which the oil was to be shipped until the 21st day of February, 1918, long after the contract period had expired.

Defendant further alleged that time was of the essence of the contract, and by reason of the failure of the plaintiff or its assigns to furnish the car within the month of January, 1918, the defendant was relieved from any liability thereunder; that the defendant in order to fill this contract had purchased, as it had a right to do, the oil in question from the Farmers' Cotton Oil Company of Winnsboro, Tex., and so notified the plaintiff, and that the plaintiff and its assigns accepted the declaration as made by the defendant, but that they wholly failed to forward the tank car to Winnsboro or to cause same to be forwarded to Winnsboro in time to receive the oil during the month of January, 1918, as they were required to do under the terms of the contract; that under the terms of the contract, by reason of the provision and the rules of the Texas Cotton Seed Crushers' Association, it was authorized to cancel, and had a right to cancel, the contract by giving to the plaintiff notice of its intention to cancel upon the plaintiff's failure to furnish the tank car for loading within the month of January, 1918, and that as a matter of fact it did so notify the plaintiff that the contract was canceled; that, prior to the time of delivery of this oil, the plaintiff had sold all its rights in said contract to the Magnolia Provision Company of Houston, Tex., who in turn had sold and assigned such rights to the Planters' Cotton Oil Company of Waxahachie, Tex., and who in turn had sold said contract and oil rights thereunder to Proctor & Gamble of Cincinnati, Ohio; that the plaintiff had parted with all its rights or interests under said contract; and that the defendant was not liable to the plaintiff for breach of said contract, if there was in fact a breach of same.

In its supplemental petition plaintiff specially denied the defenses set up by the defendant, and denied particularly that it had failed to comply with any of the rules of the Texas Cotton Seed Crushers' Association governing the terms of said contract.

The case was tried before the court without the intervention of a jury, and the court, on the 8th day of January, 1921, entered its final judgment awarding to the Cuero Company damages in the sum of $1,460 with interest from the 27th day of February, 1918, to the date of judgment, aggregating the sum of $1,711.60, and interest thereon at the rate of 6 per cent. from the date of judgment until paid.

[1] It is first contended by appellant that the judgment should be reversed because the contract period ended at midnight of the 31st day of January, 1918, and that appellee was, by the provisions of the contract, required to give appellan notice of forwarding of a car to receive the oil 10 days prior to the expiration of said contract period, and to also forward said car so that under the ordinary course of transportation it could reach the place from which the oil was to be shipped, and appellee wholly failed to meet such requirements. That in fact the car forwarded by appellee or its agents did not reach the place from which the oil was to be shipped until the 21st day of February, 1918, and that by reason of the failure of appellee to comply with said provisions and requirements of said contract it breached the same. That by reason of such breach of the terms of the contract and the rules of the Texas Cotton Seed Crushers' Association, appellant was authorized to cancel, and did cancel, the contract long prior to the time appellee purchased the car of oil from the Victoria Company, and therefore appellee is not entitled to a recovery of damages against appellant for failure on its part to deliver the oil sold by it for shipment in January, 1918.

We are unable to agree to appellant's contention that the contract ceased to exist after the 31st day of January, 1918, or that appellee breached the same in the manner and particulars pointed out.

By Rule 30 of the Texas Cotton Seed Crushers' Association, it is provided that in case the buyer shall fail to give the notice of the forwarding of the car, or fail to forward the same as required by said rule, the seller shall, at his option, have the right to cancel the contract, and, in case the seller elects to cancel, he must, after he has acquired such right, immediately notify the buyer by wire of his intention to do so, but in such case the contract is to remain in force until such notice of cancellation has been given by the seller, and that a failure to give such notice shall operate as a renewal of the contract and shall extend the time of same as many days as seller allows to lapse before giving such notice.

While the contract, for a breach of which this suit is brought, provided for the shipment of this oil to be made in January, 1918, and that the tank cars should be furnished by the buyer, and the routing to be at buyer's direction, Rule 30 of the Texas Cot-

ton Seed Crushers' Association provided that said contract should remain in full force and effect until the seller elected to cancel the same, and notified the buyer immediately of such intention; and Rule 32 also provided that when such tank cars did arrive at their destination, and the buyer notified the seller of the same, the seller should load such cars within 48 hours after their arrival at destination, and in case the seller did not load such tank cars within such time, he should pay the buyer $2 for each tank car, for each day's delay beyond the 48 hours, or, if at the expiration of 48 hours such tank cars had not been loaded, the buyer had the right to cancel or purchase the quantity of oil due on contract for the account of the seller at lowest obtainable price through any cotton oil broker in good standing, holding the seller for the loss sustained.

[2] It is clear from the terms of the contract between the parties that the same was in force and effect on the 21st day of February, 1918, the time the Cuero Company notified the packing company that, unless the car of oil was loaded in 48 hours, it, the Cuero Company, would buy it for the account of the packing company a car of oil to fill its contract, unless the packing company had theretofore, in time and manner as provided in the contract, canceled the same. The question then arises: Did the packing company so cancel the contract? The packing company contends that it had given the notice of cancellation, as required by the contract, on the 6th day of February, 1918, which is shown by the following facts:

On the 1st day of February, 1918, the Cuero Company wired the packing company that it, the Cuero Company, had been advised that the car to receive the oil had been forwarded to the Farmers' Cotton Oil Company of Winnsboro, Tex., on the 24th day of January, 1918. After the receipt of this wire, the packing company, on the 6th day of February, 1918, wired the Farmers' Oil Company of Winnsboro, from whom it had bought a car of oil to fill its contract with the Cuero Company, that the car to receive the oil had been forwarded on January 24, 1918, and asked the Farmers' Company if it would load the car on arrival as per contract. On the same day, that is, February 6, 1918, the Farmers' Company wired the packing company that it would not load the car except at market price. Upon receipt of this telegram the packing company immediately wired the Cuero Company as follows:

"Houston, 2/6/1918.

"Cuero Cotton Oil Co., Cuero, Texas. Farmers' Winnsboro wire will not load P. & G. tank except at market price to-day.

"Houston Packing Company."

The wire last mentioned was followed by the following letter:

"Houston, Tex., Feb. 6, 1918.

"Cuero Cotton Oil & Mfg. Co., Cuero, Texas—Gentlemen: PCC. No. 1949—S. C. No. 1791. We to-day wired the Farmers' Cotton Oil Co., Winnsboro, Texas, as follows: 'Proctor & Gamble Co. tank 1975 forwarded January 24th for 1 tank prime crude C/S oil our purchase December 4th Yepp, will you load tank on arrival per contract? On receipt of this please telegraph.' And we are now in receipt of their reply as follows: 'Winnsboro, Texas, 2:00 P. M. 2—6—1918. Houston, Packing Co., Houston, Texas. Will not load tank except at market price to-day. [Signed] Farmers' Cotton Oil Company.'

"We transmitted you this information by wire to-day as follows: 'Farmers' Winnsboro wire will not load P. & G. tank except at market price to-day.'

"Please advise Farmers' Cotton Oil Co., Winnsboro, at once your intentions regarding this oil.

"Yours truly, Houston Packing Company."

T. F. Maurin, manager for the packing company, testified that, by an established custom among those dealing in cotton seed products, the notice given by the packing company to the Cuero Company that the Farmers' Company of Winnsboro had refused to load the car of oil except at market price on February 6, 1918, was notice to the Cuero Company that the contract between the Cuero Company and the packing company was canceled.

It cannot be held, we think, that the correspondence between the parties above referred to shows, as a matter of law, that the packing company intended thereby to notify the Cuero Company that the contract in controversy was canceled, or that such correspondence had any such effect, even though the packing company so intended. This being true, before such facts could have been held by the trial court to constitute a cancellation of the contract, it was necessary for the court to have also found that the established custom testified to by T. F. Maurin did in fact exist.

Thornton Hamilton, manager for the Cuero Company, testified that he had been a member of the Texas Cotton Seed Crushers' Association and the Interstate Cotton Seed Crushers' Association of South Texas for three or four years; that he had had considerable dealings with oil men, oil producers, buyers and consummers, and brokers for eight or nine years; that as manager and president of the Cuero Company he had sold possibly 600 or 700 tank cars of oil, involving several million dollars; that he was familiar with the custom existing among the oil mill men, brokers, and producers relative to transactions covering the buying and selling of oil and declaring tanks of oil from one to another; and that there was no such established custom as testified to by T. F. Maurin.

Under this state of facts, the question

as to whether such custom did in fact exist was a question for the decision of the trial court, which, in view of the judgment rendered, must have been decided adversely to the contention of appellant, and we are unable to say that such decision is not amply supported by the evidence. We therefore overrule the first contention of appellant.

[3] Appellant's contention, as presented by its fourth proposition, is that the Cuero Company had sold all its rights in the contract between it and appellant to a third party, and therefore it had no cause of action against appellant for a breach of the contract.

We do not think appellant's contention can be sustained. While it is shown that the Cuero Company sold the car of oil it purchased from the packing company to a third party, it is not shown that the Cuero Company had transferred its contract with the packing company to a third party so as to release it from the obligation of seeing that the oil was delivered to its purchaser, nor is it shown that such purchaser had agreed to look to the packing company for the delivery of the oil and to release the Cuero Company from its obligation to deliver the oil sold by it to such purchaser, or that the sale by the Cuero Company, in the manner made, so far as shown by the record, had the effect to release that company from its obligation to see that the oil was delivered to its purchaser. The Cuero Company was, we think, bound to deliver to its purchaser a car of oil, and to do so it had the right under the contract between it and the packing company to purchase the oil as it did so as to fill its contract of sale with its purchaser, and thereby relieve itself from such damages as would have resulted to it had it failed to deliver the oil sold by it to its purchaser.

[4] There is no merit in the contention of the appellant that the evidence shows that the Cuero Company purchased the oil from the Victoria Company on the 27th day of February, 1918, 3 days after the expiration of the 48 hours after it had given notice that it would so purchase if the packing company failed to deliver the oil it had sold to the Cuero Company within 48 hours, and that therefore it, the Cuero Company, could not recover the difference in the price at which it had purchased and the price it had paid to the Victoria Company on the 27th of February; that the measure of damages, if any, should have been confined to the difference in the price of oil at which it was sold to the Cuero Company and the market price of the oil immediately upon the expiration of the 48-hour notice; and that, as the market price at that time was not shown, no recovery could be had.

Notwithstanding the letter written by the J. H. Hailey Company to the Victoria Company, tending to show that the oil purchased for the account of the packing company was so purchased on the 27th day of February, 1918, it is shown, we think, that the oil was in fact purchased on the 25th day of that month, as it was shown by the telegram from the packing company to the Cuero Company of date February 25, 1918, that the packing company had theretofore been notified that the Cuero Company had at that time purchased the oil to fill the contract between it and the packing company; but if it be conceded that the oil was not purchased until the 27th of February, still appellant's contention could not be sustained. By the terms of the contract the Cuero Company had the right, upon failure of the packing company to deliver the oil sold by it, to purchase the oil after giving 48 hours' notice of its intention so to do. This, we think, means that the Cuero Company had a reasonable time after the expiration of the 48 hours' notice in which to purchase the oil, and we are not, in the absence of evidence relative to its opportunities to so purchase, prepared to hold that 2 or 3 days was an unreasonable time to be allowed for such purchase.

[5] The appellant makes the further contention that the judgment should be reversed because the court permitted the witness Thornton Hamilton, after he had testified that he could not recall the market price of cotton seed oil on February 27, 1918, without looking at a circular issued by the United States Food Administration fixing the price of such oil, to use such circular to refresh his memory. It insists that the testimony of the witness should have been limited to facts which he knew of his own knowledge, and that, while he may be permitted to refresh his memory by the use of memorandum made and kept by himself, he should not be permitted to use a circular as that used by the witness in this case.

We overrule appellant's contention. It is well established by the decisions of all our courts that a witness testifying to the market price of a mercantile commodity on a certain day may refer to and refresh his memory from market quotations regularly issued as to the market price of such commodity. 1 Greenleaf on Evidence, §§ 436, and 438; T. & P. Ry. Co. v. Isenhower, 62 Tex. Civ. App. 223, 131 S. W. 297; T. & P. Ry. Co. v. Slator (Tex. Civ. App.) 102 S. W. 156; St. Louis, I. M. & S. Ry. Co. v. Wills (Tex. Civ. App.) 102 S. W. 733.

[6] It is also settled that a witness may refresh his recollection of certain facts or matters by written memoranda which he knew showed the truth relative to such facts or matters, if by such assistance his recollection can be stimulated and refreshed so as to make it a distinct and actual present recollection, and it is not necessary that such memoranda referred to by the witness shall have been written by himself. Texas & Pa-

cific Ry. Co. v. Birdwell (Tex. Civ. App.) 86 S. W. 1067; Elliott's Evidence, §§ 866, 867.

The witness Hamilton testified that he knew the market price of oil of the grade and character of that involved in this case during January and February, 1918; that such price was fixed by the United States Food Administration, but that he could not call to mind exactly what that price was at that time; that he had a circular issued by said Food Administration which showed the price, and that he could refresh his memory by looking at such circular. He was permitted to examine such circular, and he then testified as to the price of the oil at such time from his own memory as refreshed.

For the reasons pointed out, all the contentions of appellant for reversal are overruled, and the judgment is affirmed.

Affirmed.